[No. 7,858.—In Bank.]

## THE NORTH BLOOMFIELD GRAVEL MINING COMPANY *v.* P. W. KEYSER.

DISQUALIFICATION OF JUDGE—CONSTRUCTION OF CODE.—The provision of § 170, Code of Civil Procedure, "that no Justice, Judge, or Justice of the Peace shall sit or act in any action or proceeding to which he is a party or in which he is interested," should not receive a technical or strict construction, but rather one that is broad and liberal.

ID.—ID.—INJUNCTION.—The prohibition does not extend to cases where the interest is simply in some question or questions of law involved in the controversy, or when it is indirect and remote; but it extends to all cases where the interest of the Judge is a direct and immediate interest in the result of the action. In an action for an injunction, where the property of the Judge was equally subject to injury by the acts sought to be enjoined as the property of the plaintiff, and where the injunction sought would equally protect his property: *Held*, the Judge was disqualified.

ID.—ID.—PROHIBITION.—A writ of prohibition will lie to restrain a Judge from proceeding in an action in which he is disqualified by reason of interest, although the Court over which he presides may have jurisdiction of the cause.

ID.—ID.—ID.—SPEEDY AND ADEQUATE REMEDY.—*Held*, that in the case at bar, an appeal would not be a speedy and adequate remedy.

APPLICATION for a writ of prohibition.

*S. M. Wilson, W. T. Wallace, W. C. Belcher,* and *Robinson, Olney & Byrne,* for plaintiffs.

Prohibition is the proper remedy. (*Downer* v. *Norton,* 16 Cal. 440; *Merced Mining Co.* v. *Fremont,* 7 id. 133; *Babcock* v. *Goodrich,* 47 id. 508.)

It was suggested, the defendant having decided upon his own competency, the correctness of his decision can not be inquired into in this proceeding. We reply that no officer can acquire jurisdiction by deciding that he has it. (*Prosser* v. *Secor,* 5 Barb. 612; *McMinn* v. *Whelan,* 27 Cal. 314.)

That a judgment void for want of jurisdiction may be attacked collaterally, and treated as a nullity, is conclusively settled in *Belcher* v. *Chambers,* 53 Cal. 639, following the cases of *Galpin* v. *Page,* 18 Wall. 350; *Pennoyer* v. *Neff,* 95 U. S. 714.

Moreover, a prohibition will be granted whenever an inferior court, in handling matters clearly within its jurisdiction, exceeds the bounds prescribed to it by law. (*State* v. *Ridgell,* 2 Bailey, 561.)

The remedy being proper, the disqualification of the defendant is determined by § 170, Code of Civil Procedure, which simply follows common law. (Broom's Leg. Max. 111; Cooley Con. Lim. 410.)

*Rhodes & Barstow,* for Defendant.

Prohibition will not lie in cases where a complete remedy exists by appeal; this is such a case. (*Wredin* v. *Superior Court,* 55 Cal. 504; *Clark* v. *Minnis,* 50 id. 510.) The same rule obtains in respect to certiorari. (*Bennett* v. *Wallace,* 43 Cal. 25.)

The character of the interest of the defendant is not such as to disqualify him. (*People* v. *Edmonds,* 15 Barb. 530; *Ex parte Leefe,* 2 Barb. Ch. 39.)

*George Cadwalader, P. Van Clief,* and *J. H. Craddock,* for the City of Marysville.

The defendant has no interest in controversy within the meaning of the statute. The question of the injury to the defendant by the acts complained of can not enter into the

case. The acts can be enjoined only to the extent to which they are injurious to the plaintiff.

Ross, J.:

The City of Marysville, in the month of September, 1879, commenced an action in the then District Court of Yuba County, over which the Hon. Philip W. Keyser presided, against the present petitioner and numerous other mining corporations and individuals—the complaint alleging, among other things, in substance, that the plaintiff is, and since the 3d day of February, 1851, has been, an incorporated city, embracing within its limits about three thousand acres of land, of which it owns and controls the city cemetery, containing about fifteen acres; the fair grounds, containing twenty-one acres; various public squares; two landing-places for steamers and barges; the city hall, jail, engine-house, and two brick schoolhouses, with the lots on which they stand; the streets and alleys, and, also, a levee, some seven miles long, which surrounds the business part of the city, but which excludes about five hundred acres of its lands; that the city is situated on a plain on the north bank of the Yuba River, at its junction with Feather River, at the head of navigation thereon, and at an altitude of seventy-two feet above the sea; that the Yuba River is a living stream, heading between the eastern and western summits of the Sierra Nevada Mountains, and passes through deep cañons on a western course until it reaches the eastern margin of the Sacramento Valley, where it debouches into that valley at a place called Yuba Mills, and crosses it on the same course in a sub-valley and empties into the Feather River at Marysville; that said river, in crossing the Sacramento Valley, runs through strips of rich bottom land, ranging from a half mile to two miles in width, which was originally first-class agricultural land; that the natural banks of the river were originally high enough to protect this land as well as the City of Marysville from overflow at the highest stage of water, without the use of levees, and that its water was clear in summer and sufficiently pure at all seasons for domestic uses and for irrigation; that steamboats for years made their landing and received and discharged their passengers and cargoes in front of the city, from

which the latter derived large revenues, and carried on a large and flourishing commerce, all of which, from causes afterwards to be mentioned, have been lost to the city; that the city made the river an outlet for its sewers, and in this way obtained (and could obtain in no other manner) a proper and adequate drainage; but that this outlet, owing to the filling up of the river with mining tailings, no longer exists, and the city during the winter and spring months, is substantially without drainage, which is a source of great damage and inconvenience thereto; that the city, apprehending that it would be overflowed from the Yuba by reason of the bed of that river becoming choked with the tailings from hydraulic mines, commenced the construction of levees, and succeeded in preventing the occurrence of such calamity until the winter of 1875 and 1876, when the bed of the Yuba, a few miles above the city, became so choked and filled with mining tailings deposited by the hydraulic mines along the headwaters of the river, that no adequate channel was left for the passage of the water, in consequence of which the waters of the river overflowed its banks, broke the levees, rushed into the city, filled its streets to the depth of five feet, endangered the lives of its inhabitants, and destroyed a large amount of valuable property belonging to the city and its people; that since then the city has enlarged the old levees and constructed new ones, expending in such defenses not less than three hundred and fifty thousand dollars, and will be obliged to spend more for the same purpose; that the protection afforded by the levees is confined to a part of the city, and is temporary and insufficient; that the city is left without any drainage in the winter season, and is liable to be filled up and overflowed; that the bed of the Yuba, at the eastern end of the city, is now raised by the tailings higher than the streets of the city, notwithstanding the streets have been raised two feet, and that were it not for the levees the city would now be uninhabitable; that the waters of the Yuba are kept constantly charged with sediment from the mining claims of the defendants to the extent of from three to thirty per cent. of its bulk, and are thereby rendered unfit for domestic or animal use, or for the purpose of irrigation; that the defendants in the action

own various mining claims situated on the hilltops adjacent to the Yuba River and its tributaries, at elevations varying from five hundred to five thousand feet above the Sacramento Valley, and which are worked by them by the hydraulic process; that the said mining claims are vast in extent, of a depth ranging from fifty to three hundred feet, and consist of the surface or non-paying earth, which is slightly and almost imperceptibly charged with fine particles of gold, and an underlying pay-streak, so called, which latter is more highly charged with gold; that the claims are worked by means of immense blasts of powder to loosen the gold-bearing and superincumbent earth, enormous heads of water to sweep the loosened earth into ditches, flumes, and tail-races, set at a heavy grade, and through which, at an immense velocity, the earth, water, and stones rush, the gold therein being separated from the earth by the action of the water, and caught by means of pavements of stones and blocks of wood set in the bottom of the ditches, flumes, and tail-races; and the refuse matter, known as tailings, and consisting of muddy water, earth, clay, sand, coarse gravel, round quartz pebbles, and cobble stones, are deposited at the dumps of the mines— which dumps are either in the bed of the Yuba River or its tributaries, or in the beds of the steep ravines and gulches immediately contiguous to and leading into the bed of that river or its tributaries; that the grade of the Yuba and its respective tributaries from the dumps to where the river debouches into the Sacramento Valley exceeds fifty feet to the mile; and that the tailings, so deposited by the defendants, with the exception of the heavy cobble and other heavy stones, are swept by the force of the water in the river and its tributaries down and through the canyon of the Yuba River to the mouth of the canyon; that the grade of the Yuba from the mouth of the canyon to its junction with the Feather River is about eight and one half feet to the mile, and is so much reduced in grade that a part of the tailings from the mines, known as slickens, sand, and small stones, chokes and fills the channel of the river, causing it to overflow and cover with debris the adjacent lands, including that part of the City of Marysville which is outside of its levees; that the mines of the defendants are the only ones from which

tailings are dumped into the Yuba River or its tributaries; that defendants are now depositing such tailings therein at the rate of fifteen millions of cubic yards annually, well knowing that the slickens, sand, and small stones contained therein will be, and intending that they shall be, carried down the channel and deposited on the lands of the City of Marysville and the other lands adjoining the river; that defendants intend to continue such acts, and assert a right so to do, and that such acts on the part of the defendants constitute a nuisance to plaintiff and its property, etc.

The plaintiff's prayer is that defendants, and each of them, be perpetually enjoined from depositing tailings and debris from their respective mining claims in the channel of the Yuba River or its tributaries, or permitting the said tailings and debris to flow therein, or from otherwise polluting the water of the said river or its tributaries.

The petitioner here, and others of the defendants in that action, appeared therein and filed demurrers to the complaint, and also moved the Court for a change of the venue thereof, basing the motion on the ground, among others, that the presiding Judge was directly interested in the result of the action; and in support of the motion the defendants submitted affidavits, which set out substantially the same facts as are made the ground of the petition here.

When the Superior Courts came into existence by virtue of the provisions of the New Constitution, the cause was transferred from the District Court in which it was commenced and was pending, to the Superior Court of Yuba County, over which Judge Keyser also presided, and still presides, as Superior Judge. On the 21st of May of the present year the motion for change of venue came on for hearing, and, after argument and consideration, was denied—the learned Judge being of the opinion that he was not disqualified from sitting in the cause. Whereupon, certain of the defendants, one of whom is the present petitioner, applied to this Court for a writ of prohibition to prevent Judge Keyser from acting in the cause, basing its claims to the writ upon the following averments, to wit: That the respondent is, and during the pendency of the aforesaid action has been, the owner of two certain lots of land situated in the town of Yuba City, in the

County of Sutter, one of which lots is his homestead and borders upon the Feather River; that the respondent owns the fee of the land to the center of said river; that his said land is directly opposite the land described in the complaint in the aforesaid action of the City of Marysville, and therein alleged to belong to the city, which land also borders on the Feather River and extends to the center thereof; that the Yuba and Feather rivers come together at nearly right angles immediately below the land of the respondent, and in such a way that many years ago the channel of the Feather River, for a considerable distance above respondent's land, was filled up by the sand and other sediment brought down by the Yuba River so as to raise the bed of the Feather River to the same height with the bed of the Yuba; and that the same causes which fill up the bed of the Yuba River cause sand and other sediment to be carried from the Yuba into the Feather River, and fill up the channel of the same opposite and upon the lands of respondent; that any filling up of the bed of the Yuba River above the City of Marysville, which has caused or will hereafter cause the waters of the Yuba River to break through its levees and flow into the city, has caused and will hereafter cause the same waters also to flow into Feather River above the lands of respondent, and against the levees which have been built to protect, and which now protect, his lands, and will endanger them in the same manner as the lands described in the aforesaid complaint are therein alleged to be endangered; that the country about the junction of the Feather and Yuba rivers, including the said lands of respondent and the site of the City of Marysville, is of a uniform level, and that the lands of respondent require levees to protect them and are protected by levees in precisely the same way as the aforesaid lands claimed by the City of Marysville; and that precisely the same causes which fill up the channels of the Yuba and Feather rivers, and, as is alleged in the aforesaid complaint, threaten the destruction of the City of Marysville, and compel it to build levees to protect the lands claimed by it, threaten the said lands of respondent, and compel him to build levees to protect them; that the aforesaid lands of the City of Marysville and the

aforesaid lands of the respondent are so similarly situated in reference to the Yuba and Feather rivers, and in such proximity, that any and every injury arising from the over-flowing of the waters of said rivers, or from the obstruction or pollution of the same, which affects the lands claimed by the City of Marysville, necessarily affects, and will continue to affect, in like manner the lands of the respondent; that if enjoining the defendants in the action from depositing tailings from their mines into the Yuba River or its tributaries, will relieve or protect the City of Marysville from the evils and dangers which threaten it, as set out in the complaint, the injunction in that action will also relieve and protect the respondent and his lands from the same evils and dangers, and no suit or action on his part will be necessary for that purpose; and that all remedy, relief, and protection afforded to the City of Marysville by that action, will avail the respondent in reference to his lands, in precisely the same manner and to the same extent as if he had joined with that city as a plaintiff in the action, or had instituted a separate action in his own name against the same defendants for the same purpose.

A demurrer having been interposed to the petition by the City of Marysville—the real party in interest—we must, for the purposes of our decision, accept as true the averments of fact contained in the petition.

It is an ancient maxim, and one founded in the most obvious principles of natural right, that no man ought to be a judge in his own cause. That principle finds expression in our statute in these words : " No Justice, Judge, or Justice of the Peace shall sit or act in any action or proceeding : 1. To which he is a party, or in which he is interested." * * * (§ 170, Code Civ. Proc.) This provision should not receive a technical or strict construction, but rather one that is broad and liberal. " The Court ought not to be astute to discover," said the Supreme Court of Michigan, in *Stockwell* v. *The Township Board of White Lake*, 22 Mich. 350, " refined and subtle distinctions to save a case from the operation of the maxim, when the principle it embodies bespeaks the propriety of its application. The immediate rights of litigants are not the only objects of the rule. A sound public policy, which is interested in preserving every tribunal appointed by law

from discredit, imperiously demands its observance." Undoubtedly the prohibition does not extend to cases where the interest is simply in some question or questions of law involved in the controversy, or when it is indirect and remote; and if the interest of Judge Keyser in the suit pending before him extends no further than that, it is clear that he is not disqualified to determine the cause. But we can not so regard his interest upon the facts as presented. The City of Marysville says in its complaint, that the defendants are causing the property of the city and that of its inhabitants great and irreparable damage by sending down the Yuba River vast quantities of tailings from their mines, thus polluting the waters of the river, filling up its channel, overflowing the adjacent lands, and depositing the debris on the lands of the city, and otherwise injuring it and its people. The defendants say, in their petition, that the respondent owns land adjoining those of the city, and similarly situated; that in precisely the same manner and to the same extent that the tailings sent down the Yuba River by them injure the lands of the City of Marysville and its inhabitants, they injure the lands of the respondent. The City of Marysville says the acts of the defendants in the particulars mentioned are unlawful, and it asks the judgment of the Court enjoining them from sending, or permitting to be sent, down the Yuba River the tailings or debris from the mines, or from otherwise polluting the waters of the river.

If the relief prayed for is awarded, the same judgment that stops the flow of tailings or debris on to the lands of the City of Marysville, stops its flow on to the lands of the respondent. *The very judgment* that will protect Marysville will protect him. His interest, therefore, is not merely in the questions of law involved in the controversy, nor is it uncertain or remote; but it is a direct and immediate interest in the result of the action. We are, therefore, of the opinion that respondent is disqualified to sit in judgment in the cause.

Two objections are made to the remedy sought: The first is that the writ can not go to the respondent as Judge of the Superior Court; the second, that the petitioner has a plain, speedy, and adequate remedy by appeal.

The Code of Procedure provides: "§ 1102. The writ of

prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, where such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person."

" § 1103. It may be issued by any Court except Police or Justices' Courts, to an inferior tribunal, or to a corporation, board, or person, in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It is issued upon affidavit, on the application of the party beneficially interested."

In support of the first objection made, it is said that the *person* mentioned in the statute is not one who constitutes, or is a member of, a Court or tribunal, but is a person who otherwise exercises judicial functions. We do not think the language employed admits of that limitation; nor, in our opinion, does the reason for the writ suggest such distinction. The Judge who is authorized to hold a Court is not the Court, as is justly observed by the learned counsel. The Court over which the Judge presides may have jurisdiction of the cause, and yet the Judge himself be disqualified from sitting or acting in it by reason of interest, as is the case here. We are unable to see why such Judge is not a " person" within the letter and spirit of the statute against whom the writ may go in a proper case. " There must in all cases be some Court *or person*," says High on Ex. Legal Remedies, § 775, " to whom the writ may be addressed and against whom it may be enforced." Where two Justices of the Peace were proceeding without authority of law to abate a supposed nuisance, prohibition was held the appropriate remedy to stay their action in *South Carolina R. Co.* v. *Ells*, 40 Ga. 87. (See also, *Ex parte Greene et al.*, 29 Ala. 52; *Hutson* v. *Lowry*, 2 Va. Cases, 42.)

The other objection urged to the issuance of the writ is, that the petitioner may have the action of the Judge of the Court below reviewed on appeal. Unlike certiorari, the statute does not make the existence of a right of appeal an answer to an application for a writ of prohibition or of mandamus. Each of these writs may be issued, under the provisions of the statute, where there is not a *plain, speedy, and adequate* remedy in the ordinary course of law—a remedy competent

to afford the applicant the relief sought. A glance at the nature of the relief sought in this case is sufficient to show that the remedy by appeal is not a plain, speedy, and adequate one. If, as has already been determined, the respondent is so interested in the determination of the action before him as renders him disqualified to sit in the cause, the petitioner has the right to insist that he do not sit. Upon an application made for a change of venue, based in part on the disqualification of the Judge, the latter decided that he was not disqualified, denied the motion, and will, as is alleged in the petition, continue to act as Judge in the case. On an appeal from the order denying the motion, no stay of proceedings is allowed by statute, and pending the slow process of appeal, other orders may be made, and possibly the cause be tried, before a Judge disqualified to act. Under such circumstances, we are of the opinion that the petitioner has not a plain, speedy, and adequate remedy in the ordinary course of law.

It is hardly necessary to say that the merits of the controversy between the City of Marysville and the miners are in no wise involved in the present proceedings.

Let the demurrer to the petition be overruled, with leave to the respondent to answer within ten days from the entry of this order.

Morrison, C. J., concurred.

Sharpstein, J., concurring:

I think, upon the facts alleged in the petition, and not denied by the respondent, that he is shown to be interested in the action which the petitioner seeks to have him prohibited from sitting or acting in. If so, the code declares that he shall not sit or act in it. The petition shows that he owns land which must necessarily be damaged by the mining operations of the defendant complained of in said action, if the land of plaintiff therein is damaged by said mining operations. The rights of plaintiff, for which it asks protection, pertain equally to the respondent. The grievance of which the plaintiff complains is one of which the respondent might complain upon the same grounds. If the plaintiff can maintain the action now pending in the Superior Court, of which

the respondent is Judge, he might maintain an action based upon the same grievance. He might have united with the plaintiff in bringing this action; or he may intervene in it at any time before the trial, on the ground that he is interested in the success of the plaintiff.

The more embarrassing question is whether the petition presents a case in which it is proper to grant a writ of prohibition to prevent the respondent from sitting or acting in said action. That writ is defined by the code to be "the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person."

The action is one of which the Superior Court, of which the respondent is Judge, has jurisdiction, and it is not alleged that jurisdiction of the persons of the defendants has not beeen duly acquired. It is, therefore, not a case in which any tribunal is acting or proceeding without jurisdiction or in excess thereof. And it may be, although the decisions are conflicting upon the question, that the judgment, if one should be entered in the action, would not be void by reason of the disqualification of the Judge to sit in it. All agree that it would be voidable at least. But if the Judge is interested in the action he has no right to sit or act in it. No more right than he would have to sit or act in an action pending in the Superior Court of a county other than the one of which he is elected Judge, without being requested by the Judge of that Court, or by the Governor so to do. His sitting or acting in an action in which the law declares he shall not sit or act, would seem to be without jurisdiction. Jurisdiction is: "The authority by which judicial officers take cognizance of and decide causes. Power to hear and determine causes." (Bouvier, Tit. "Jurisdiction.") Now a Judge who is interested in in an action, not only has no authority to hear and determine it, but he is expressly prohibited from doing so. I am aware of the rule by which this Court is precluded from determining the title of a Judge to his office, upon an application of this nature. While in the actual possession of the office of Judge of a court the judgments and orders of a Judge *de facto*, are not void, nor even voidable, on the sole ground of

his not being a Judge *de jure*. But all the cases seem to agree that the judgments and orders of a Judge made by him in an action in which he is interested are voidable, while many hold that they are void, being in contravention of public policy. The bare fact of a Judge sitting in an action in which he is interested is sufficient ground for the reversal of any judgment or order that he may make in that cause. That would seem to indicate that a Judge so interested would act without or in excess of his jurisdiction. If I am correct in this, the fact of a motion for a change of the place of trial, having been made and denied, is an immaterial circumstance.

It is suggested, however, that the petitioner has a plain, speedy, and adequate remedy in the ordinary course of law by appeal from the order denying that motion. The Code gives it that remedy, but is it speedy and adequate ? An appeal from that order would not stay proceedings, and the action might be tried before the appeal could be perfected. Therefore the remedy by appeal is not adequate. A party has a right to have his case *heard and determined* by a Judge who is not disqualified by interest from hearing and determining it. And if an interested Judge can not be prevented from hearing and determining an action in which he is interested by any other remedy than that which is here sought, then there is no other adequate remedy for that wrong. The proceedings can not be *arrested* in any other way, and the petitioner has a right to have them *arrested*, if they are without or in excess of the jurisdiction of the respondent.

An adequate remedy in a case like this would have to be one by which the proceedings of the respondent would be *arrested*. I know of no other than the remedy prayed, by which that object could be accomplished. Therefore, I concur in the order overruling the demurrer.

MYRICK, J., concurring :

I concur in the order overruling the demurrer, for the reasons stated by Mr. Justice Ross; but I wish to be distinctly understood as not expressing, directly or indirectly, the view that this will affect the injunction issued by the Court below or the order granting the.same. My concurrence is to the

extent of prohibiting Judge Keyser from sitting further in the case, if no answer shall be made denying his alleged disqualification.

THORNTON, J., dissenting:

I dissent from the conclusion reached by the majority. The Court having jurisdiction, the writ of prohibition is not the proper remedy. I do not think the writ of prohibition runs to a judicial officer to prevent him from proceeding to hear and decide a cause, when the jurisdiction belongs not to him as a person, but to the Court of which he is a constituent part.

I agree in the opinion of the majority that Judge Keyser is disqualified.

MCKEE, J., concurred in the dissenting opinion of Mr. Justice Thornton.