## FERRELL *v.* KEEL.

### Opinion delivered April 15, 1912.

JUDGES—DISQUALIFICATION.—Under Const. 1874, art. 7, sec. 20, providing that no judge shall preside in the trial of any cause "in the event of which he may be interested," the judges of the Supreme Court are disqualified in a cause involving the passage of the general appropriation bill, upon which their salary depends.

Appeal from Jackson Chancery Court; *George T. Humphries,* Chancellor.

*John W. and Jos. M. Stayton,* and *McCaleb & Reeder*, for appellants.

*Morris M. Cohn* and *Stuckey & Stuckey,* for appellees.

PER CURIAM: In case No. 2046, *Ferrell* v. *Keel,* which has been argued and submitted, one of the principal points of controversy relates to the question of the validity or invalidity of an act of the General Assembly of 1911, its validity being assailed on the ground that the enacting clause does not conform to the constitutional requirement. The form of the enacting clause is "Be It Enacted by the General Assembly of the State of Arkansas." The form prescribed by the last amendment to the Constitution, known as the Initiative and Referendum Amendment, is "Be it Enacted by the People of the State of Arkansas;" and the question in this case is whether or not this requirement applies to bills which originate in the General Assembly as well as those initiated by the people.

Since the submission of the case, the attention of the judges has been called, for the first time, to the fact that the general appropriation bill, enacted by the last Legislature, covering appropriations for the expenses of the executive and judicial departments, including the salaries of the judges, bears the enacting clause, "Be It Enacted by the People of the State of Arkansas," and a majority of the judges have reached the conclusion that this attitude of the case disqualifies them from sitting in judgment, for the reason that the decision of the point in this case necessarily results in the decision of the question of the validity of the appropriation bill. The Constitution of this State provides:

"No judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity within such degree as may be prescribed by law; or in which he may have been of counsel or have presided in any inferior court." Art. 7, § 20.

It is thus seen, from the statement of the case, that, if the judges sit in judgment on this case, they will necessarily decide whether or not their salaries for the current year can be paid, or whether they must wait until the General Assembly shall pass another appropriation bill. The amount of their salaries is fixed by the Constitution, and is not dependent upon that statute, but the payment of the same is dependent upon the will of the Legislature in appropriating funds for that purpose; and, unless there is a valid appropriation bill, the salaries can not legally be paid.

The judges of this court are not parties to the suit, nor are they, strictly and technically speaking, interested in the result of this particular litigation, but they are as much interested in the result as if they were directly deciding the question whether or not their salaries for the current year are to be paid; for, as before stated, that necessarily results from the decision of this case. In *Johnson* v. *State*, 87 Ark. 45, we said:

"While the Constitution speaks of a 'party' to the cause, we are of the opinion that, both upon sound reason and according to the weight of authority, the word should not be construed in a technical and restricted sense to mean a party to the record, but it should be held to mean any one who is pecuniarily interested directly in the result of the suit, although not a party to the record and not necessarily bound by the judgment. Any other construction totally disregards the spirit and defeats the purpose of the constitutional prohibition; for, if a judge may be influenced at all in his judgment by the fact that a person who is directly interested in the result of the suit is related to him, the potency of the influence is not lessened by the absence of the related party from the record."

Mr. Works, in his textbook on the subject, says:

"It is the policy of the law to withhold from a judge all power or jurisdiction to act in any matter in which he has a personal interest, irrespective of the wishes or consent of the

parties interested. * * * It must be such an interest as will be affected directly by the determination of the action, and not incidentally or in an uncertain or remote degree. But it must not be understood from this that some interest of the judge must be actually involved in the issues and will be directly affected by the result. If his rights regarding the subject-matter of the pending action will be affected, or he may be placed in a more or less favorable situation in litigation that may follow respecting the same subject-matter, he is disqualified." Works on Jurisdiction of Courts, § 62.

In *North Bloomfield Gravel Mining Co.* v. *Keyser*, 58 Cal. 315, the court said: "It is an ancient maxim, and one founded in the most obvious principles of natural right, that no man ought to be a judge in his own cause. * * * This provision should not receive a technical or strict construction, but rather one that is broad and liberal."

And in *Stockwell* v. *Township Board of White Lake*, 22 Mich. 350, the Supreme Court of Michigan said:

"The court ought not to be astute to discover refined and subtle distinctions to save a case from the operation of the maxim, when the principle it embodies bespeaks the propriety of its application. The immediate rights of the litigants are not the only objects of the rule. A sound public policy, which is interested in preserving every tribunal appointed by law from discredit, imperiously demands its observance."

The question of the amount of the interest of a judge in the litigation is not material. It must be direct, and not too remote; but if he has an interest, however small, he is disqualified. The Constitution does not undertake to measure the extent of the interest which disqualifies, but declares in plain terms that no judge or justice shall preside in the trial of any cause "in the event of which he may be interested."

The Supreme Court of Massachusetts, speaking on this particular phase of the question, said:

"Nor does it make any difference that the interest appears to be trifling; for the minds of men are so differently affected by the same degrees of interest that it has been found impossible to draw a satisfactory line. Any interest, therefore, however small, has been held sufficient to render a judge incompetent." *Pearce* v. *Atwood*, 13 Mass. 324.

It is a delicate duty for a judge, conscious of his desire to do justice in every case and at the same time anxious to preserve respect for his court, to decide a doubtful question of his own qualification to sit in a given case.   He may, even in spite of adverse criticism, sometimes be forced to serve because the circumstances afford no grounds of legal disqualification, when his personal preference would be to give place to another. In such event he must face his duty and discharge it, regardless of criticism.

But where he has an interest, however small, in the result of the litigation which disqualifies according to the spirit of the law, a technical construction of the letter of the law must not be resorted to, that disqualification may be avoided.

An order will, therefore, be entered announcing the disqualification of the judges, and the clerk is directed to certify the same to the Governor, to the end that special judges may be appointed to sit in the case.