## PUGH VS. THE CITY OF LITTLE ROCK.

1. EVIDENCE: *Parol inadmissible to prove matter of record.*
   Parol evidence is not admissible to prove an ordinance or resolution of a city council. The ordinance or resolution itself, or a certified copy of it, must be produced.

2. MUNICIPAL CORPORATION: *Issuing scrip at discount: Evidence.*
   An ordinance of a city council providing for the issuance of certificates of indebtedness at a discount, and not dollar for dollar of indebtedness, is illegal and void, and not admissible as evidence against the city.

3. PAYMENT: *Acceptance of city scrip as.*
   The acceptance of a city's certificates of indebtedness as satisfaction in full of a claim against the city, is a payment and extinguishment of the debt.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Howard,* for appellant.

*Ben. Johnson, contra.*

HARRISON, J. Henry H. Pugh, on the tenth day of May, 1872, brought suit against the city of Little Rock for fees due him as city solicitor from the first day of January, 1871, to the thirtieth day of April, 1872 inclusive, amounting to the sum of $5,424.50.

The city, in her answer, alleged that the city council, on the ——— day of January, 1871, suspended the plaintiff from office for misdemeanor in office, and that he so continued suspended until the expiration of his then term, on the tenth day of November, 1871, and denied that he was entitled to the fees of the office during that time; and she alleged that by an ordinance passed on the fourteenth day of October, 1871, previous to the plaintiff's election for the

term upon which he entered on the tenth day of November, 1871, the city council fixed the city solicitor's compensation at $1,800 a year, and that he was not entitled to fees; and also averred that he had been paid.

Though containing no matter of counter-claim or set-off, the plaintiff filed a reply to the answer, in which he denied the averment of his suspension by the city council, and admitted a payment on his claim since the commencement of his suit of $2,754 in warrants of the city, worth when received—the tenth day of September, 1872—seventy cents on the dollar. On the twenty-seventh day of May, 1873, he brought another suit against the city for like fees from the eighteenth day of May, 1872, to the thirtieth day of April, 1873, amounting to the sum of $5,295. The two suits were, at the June term of 1873, consolidated and continued.

After the continuance, the case appears to have been dismissed by the plaintiff, but was reinstated by consent.

At the October term, 1873, the city filed an answer to the whole action, none having been filed in the second suit before the consolidation, and averred therein that she had, since the continuance, paid the plaintiff the sum of $10,-134, in certificates of indebtedness, which he accepted in full satisfaction in and discharge of the demands sued on, and of his claim against her on like account up to the thirty-first day of August, 1873; each of said certificates stating that the amount named in it had been allowed by the council, and that a warrant for the same would be drawn in favor of the holder on the city treasurer when there should be money in the treasury belonging to the police fund to pay it.

After two trials had been had, and the verdict set aside, in the first instance upon the application of both the plain-

tiff and the defendant, and in the second upon the defendant's, the case was finally tried at the October term, 1877, and a verdict for the plaintiff was returned for one dollar.

The plaintiff filed a motion for a new trial. His motion was overruled, and he appealed.

It was upon the trial admitted by the plaintiff that his fees had been paid to the tenth day of November, 1871.

He testified in his own behalf that he was elected city solicitor in November, 1869, and was re-elected in November, 1871, and held the office until the eleventh day of November, 1873. That he was as such solicitor entitled to receive as compensation for his services a fee of $2.50 upon each conviction in the police court, which was taxed as part of the costs, and was either collected in money and paid into the city treasury, or paid in labor upon the streets by the party convicted. That during his second term, a controversy arose between him and the city council about his fees, and for a long time it refused to audit his account, and which was not done until the fifth day of September, 1873. There was then found to be due him on the first day of that month, $10,135, and on the twelfth day of September he received that amount in certificates of indebtedness from the city clerk, and receipted to him for it. The certificates were then only worth from thirty-three to thirty-five cents on the dollar, and he at first refused to sign the receipt, which was written and handed to him by the clerk, because the amount in certificates was not equivalent in money to the sum due him, and demanded for each dollar due him, two in certificates. That was on Thursday or Friday, and the clerk, saying he had not time to make them out then, told him to come again on Monday, and he would hand him a like amount, and that with that understanding he signed the receipt. He went again on Monday, but the

clerk then refused to issue or let him have any more. He then offered to return those he had received, and demanded a return of his receipt, but the clerk refused to take them back or to surrender the receipt.

He had since, he said, sold and disposed of the certificates. He further said that his claim against the city for fees that had accrued from the first of September to the eleventh of November, 1873, when he went out of office, and which amounted to $740, had been paid him, except one dollar, and in certificates.

And John R. Montgomery testified for him, that he was present when he received the certificates from C. M. Barnes, the city clerk, and heard him tell him that the amount was not sufficient to pay his claim according to the ordinance of the city. council, and claimed that he was entitled to double the amount that he had made out, and Barnes told him that he would have the balance ready and hand it to him on Monday, and the plaintiff said he would with that understanding sign the receipt and did so.

The defendant read in evidence three letters or communications from the plaintiff to the city council in relation to his claims against the city. The first, dated the sixth of June, 1873, simply requested a settlement of his claims. In the next, which has no date, he asked the council to pass an ordinance or resolution, directing the city clerk, when he should produce to him satisfactory evidence of the dismissal of his suit, to issue certificates of indebtedness to him to the amount of his fees as reported by the police judge in his monthly reports; and in the other, which was dated August, 1873, after saying he had understood that it objected to making any allowance for his fees until his suit was dismissed, stated that he had dismissed his suit and that objection was removed.

The defendant then read from the records of the city council, the following resolution, passed or adopted on the fifth day of September, 1873:

"Whereas, no compensation has been paid to H. H. Pugh, for his services as city solicitor, since the tenth day of November, A. D. 1871; and whereas, a fee of two dollars and fifty cents was by law allowed to the city solicitor for each and every case successfully prosecuted by him, when the said H. H. Pugh was last elected, and said fee has been assessed and taxed as costs since the time aforesaid, a portion of which has been paid into the city treasury and the balance worked out; and whereas, the said H. H. Pugh has withdrawn all suits by him against the city; therefore, be it resolved, that the city clerk be, and he is hereby, ordered to issue and pay over to the said H. H. Pugh, or his attorney, certificates of indebtedness of the city—no money being in the treasury to pay the same—for the amount of fees due the said H. H. Pugh from November 10, 1871, to August 31, 1873. Said certificates to be in the usual form of certificates past due; and the amount to be ascertained by the clerk from the reports of the judge of the police court of cases prosecuted in said court during said time and other official records. Said certificates to be issued by the president of the city council and the city clerk."

She then produced and read an itemized statement, dated September 12, 1873, of the plaintiff's fees from November 10, 1871, to August 31, 1873, for each month, amounting in the aggregate to $10,135, to which was appended the following receipt:

"Received of the City of Little Rock the sum of ten thousand one hundred and thirty-five dollars ($10,135) in full of the above stated account.          H. H. PUGH."

Also, the following instrument:

"In consideration of the sum of ten thousand one hundred and thirty-five dollars, in certificates of indebtedness of the City of Little Rock, the receipt whereof is hereby acknowledged, I hereby waive all right or claim to any further compensation, whether for fees or salary, on account of services rendered in the police court as city solicitor from the tenth of November, 1871, to the thirty-first day of August, 1873.

"H. H. Pugh,

"City Solicitor."

Several exceptions were reserved by the plaintiff during the trial to the rejection of evidence offered by him, and also to the admission of evidence adduced by the defendant.

1. EVI-
DENCE:
Parol in-
admissible
to prove or-
dinance or
resolution
of a city
council.

Plaintiff's witness, Montgomery, was asked at what rate of amount of claim were the certificates to be issued to the plaintiff, which question he was not permitted to answer.

If certificates might have been lawfully issued at a discount, or otherwise than dollar for dollar of the claim, the authority therefor could only have. been by ordinance or resolution of the council duly passed, the proof of which could only have been by the ordinance or resolution itself, or a duly certified copy of it, and not as was offered to be done by parol testimony.

He was also asked by the plaintiff the question: "Do you know how the city was then paying her officers?" but was not allowed to answer it. What was expected to be proved by the witness's answer does not appear, and we are unable to see its relevancy to the issue, or how the plaintiff may have been prejudiced by the refusal of the court to permit the witness to answer the question.

The plaintiff offered but was not permitted to read the

Pugh vs. The City of Little Rock.

following resolution of the council, passed or adopted on the first day of August, 1873:

"Resolved, That the order of the council passed on the twenty-third day of May, 1873, forbidding the further issuance of certificates of indebtedness, be and the same is hereby suspended for the special purpose of paying the city officers; and the president and clerk are hereby directed to issue certificates of indebtedness bearing no interest, sufficient to pay in currency the claims of city officers that have been allowed prior to this time, and pay the same over without delay." *2. MUNICIPAL CORPORATION: Issuing scrip at discount: Evidence.*

When this resolution was passed the council had not adjusted or allowed the plaintiff's claim, or made any provision for a settlement of it. But if it extended to and embraced his claim as well as others, and provided, as it seems to have done, for the issuance of certificates at a discount and not dollar for dollar of indebtedness, it was, as we shall presently see, without authority of law and void, and its exclusion from the jury was proper.

He also offered to read the record in a case in the Pulaski chancery court in which he was plaintiff and John R. Triplett, the police judge, was defendant, concerning his fees, and as the bill of exceptions states, the stating and auditing the same, which the court refused to permit him to do. The record was not made part of the bill of exceptions, and we are unable to see its pertinency to the case.

He objected to the defendant's reading to the jury the beforementioned letters or communications to the city council. We can see no objection to their admission.

The court refused to instruct the jury at the request of the plaintiff, that if when he received the certificates and gave his receipt for them in satisfaction of his demand against the city, it was with the understanding and upon *3 PAYMENT: Acceptance of city scrip as.*

the assurance of the city clerk that he would thereafter issue to him other certificates of a like amount; and that the clerk had afterwards declined and refused to issue to him other certificates than those he had then so received, and that he, upon such refusal, tendered back to the clerk those received and demanded a return of his receipt, and the clerk declined to take back the certificates and surrender the receipt, he had the right to sell and dispose of the certificates; and his acceptance of them was not a satisfaction and discharge in full of his demand, but only to their money or market value; but against his objection, instructed them as follows: If the plaintiff accepted from the defendant its certificates of indebtedness as satisfaction in full of his demand, and said certificates had a market or money value, it was an absolute payment and discharge; and where an open account is settled by the note or other evidence of debt of the debtor, which the creditor assigns or disposes of, so that he can not surrender it or return it to the maker, the account is extinguished and no action can be maintained on it.

The city clerk had no authority to issue certificates to the appellant to an amount greater than the sum actually due him—in other words, more than a dollar in certificates for each dollar due him in money—and so bind the city to the payment of more than it had received consideration for; and the council could not, if it had attempted to do so, confer such power upon him.

Judge Dillon says: "The general principle of law is settled beyond controversy, that agents, officers or even a city council, of a municipal corporation, can not bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being in terms authorized) *is*

*against public policy.* This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are the corporators ; the officers are but the public agents of the corporations." *Dill. on Munic. Cor.. sec 381; Shirk v. Pulaski County, 4 Dill., 209; Foster v. Coleman, 10 Cal., 278.*

The instruction asked by the plaintiff was rightly refused.

There can be no question that if the plaintiff accepted the certificates as satisfaction in full of his claim against the city, it was a payment and an extinguishment of the debt, as the jury were instructed by the court. *2 Sto. on Con., 979; 2 Pars. on Con., 624; 2 Green. on Ev., secs. 519–520; Carter v. Davis, 8 Ark., 213 ; Carlton v. Buckner, 28 Ark., 266 ; Brugman v. McGuire, 32 Ark., 733.*

And if not so intended at the time, it became such by his election when he sold the certificates, and so put it beyond his power to return them. *Holmes v. D'Camp, 1 John., 34; Spooner v. Rowland, 4 Allen, 485; Mooring v. Mobile M. D. and M. Ins. Co., 27 Ala., 254.*

The court gave on its own motion, also, the following instruction, to which the plaintiff excepted :

If the plaintiff received from the defendant certificates of indebtedness to the amount upon their face of his claim, $10,875, and he has sold or disposed of the same, he is estopped to say that he has not been paid ; but if those so received and sold or disposed of by him did not nominally amount to the sum due, he is entitled to recover the difference between the nominal amount and the said sum of $10,875.

The court evidently misapprehended the issue before the jury. The second suit was commenced on the twenty-seventh of May, 1873, and was for fees which accrued

prior to the first of that month, and the fees which after-wards accrued were not, as a matter of course, sued for. The amount paid the plaintiff on the twelfth of September, 1873, included as well those which had accrued between the thirtieth of April and first of September of that year as those sued for, unpaid.

The plaintiff stated in the course of his testimony that his fees which accrued between the thirty-first of August and the end of his term amounted to $740, all of which, he said, with the exception of one dollar, had been paid, and for that, as we must suppose, the jury gave him a verdict.

The instruction, though clearly wrong, was to the preju-dice of the appellee and not of appellant.

The judgment is affirmed.