SATTERFIELD, MAYOR, *v.* FEWELL.

4-6255                                        149 S. W. 2d 949

Opinion delivered March 24, 1941.

68

*Cooper Jacoway, James I. Teague* and *John T. Jernigan,* for appellant.

*Floyd Terral,* for appellee.

SMITH, J. Appellee filed a petition for a writ of mandamus against appellant, as mayor of the city of Little Rock, which contained the following allegations. From June, 1930, to October 1, 1939, he was custodian of City Park. On June 12, 1937, as such custodian, he was placed under Civil Service, by virtue of act 322 of the Acts of the 1937 Session of the General Assembly of this state. Appellant—respondent—is, and, on October 1, 1939, was, the mayor of the city of Little Rock.

It was further alleged that "About October 1, 1939, respondent, for economic reasons, suspended the operation of certain positions and jobs under civil service for the remainder of the year 1939 for the purpose of bringing the expenditures for that year within the income (of the city), and induced the city council to acquiesce therein. Petitioner was one of the employees respondent laid off from October 1, 1939, for the remainder of the year, with the consent of the city council."

Petitioner's salary was $109 per month, and his position has not been abolished. No charges were preferred against him, and he has not been legally discharged, but, in violation of his rights as a civil service employee, the mayor instructed the city engineer, who was petitioner's superintendent, to drop petitioner from the city pay

roll on October 1, 1939, for the remainder of the year, and since the 1st of the year, 1940, respondent has failed and now refuses to instruct the city engineer to again place petitioner's name on the pay roll and permit him to resume his duties, from which he was temporarily suspended, which he has, at all times, been, and now is, ready, willing and able to perform.

It was alleged that the city is no longer under the economic strain that brought about his suspension for the months of October, November and December, 1939, and that it now has ample funds to pay him and all other employees; wherefore, he prayed that respondent, as mayor, be directed to restore his employment. The relief prayed was granted, and from that judgment is this appeal.

We have before us a voluminous record, consisting, in part, of the testimony of the city clerk, the city collector, numerous members of the city council and the mayor; but we will discuss only the testimony which we think should control the decision of the case.

It appears very clear that at the time appellee and other employees were suspended the city was compelled to practice numerous economies to keep the expenditures of the city within its revenues, as Amendment No. 10 to the constitution requires. It appears also that the city might have continued the employment of appellee for the remainder of the year 1939 without exceeding its revenues; and it appears also that the city's financial condition was improved during the year 1940, and that the revenues for 1940 exceeded the expenditures by $8,087.01, so that appellee could have been employed and paid, not only for the remainder of 1939, but for the whole of 1940, without exceeding the revenues of the city during those periods. But it has been said so often that it has become a proverb that it is the last straw which breaks the camel's back. In view of the fact that out of the city's revenues for 1940 of something less than $700,000, a surplus of only slightly more than $8,000 remained, it does not appear to have been unwise to have practiced economy.

Now, it is not contended that appellee's suspension was unauthorized; nor is it contended that any attempt is being made to supplant him by the appointment of another to his place; nor has any action been taken which will affect his salary if and when he is reinstated to his place. It is conceded that under civil service regulations no charges having been preferred against appellee, his name stands at the head of those whose names must be considered when the place is re-filled.

While there is no question but that the mayor suspended appellee with the approval of the city council, there is a question as to the time for which he was to be suspended or, rather, the time during which his place should remain unfilled. The testimony of the mayor is to the effect that after a communication from him to the city council as to the state of the city's fiscal affairs, he was authorized and directed to suspend appellee and certain other employees until the financial condition of the city justified his and their restoration, and in the mayor's opinion that time had not arrived and for that reason appellee had not been placed back to work. On the other hand, members of the council testified that they had voted for the resolution under which appellee was suspended under the impression, and, as they thought, with the understanding, that appellee should be suspended only during the remainder of the year 1939, and would be restored at the beginning of the year 1940 if the city's finances permitted this to be done, and in their opinion the city was able after the 1st of 1940 to restore appellee to his place.

The undisputed testimony is to the effect that a number of the members of the council so advised the mayor and urged the latter to restore appellee to his place. It appears also that a resolution was adopted by the Parks Committee, the committee of the council having jurisdiction over the city's parks, directing appellee's restoration. But the legislative powers conferred by § 9940, Pope's Digest, are conferred upon the council, and not upon the committee thereof. It is the council, sitting as such, which has legislative powers, and not the committees thereof.

It does not appear that the council, sitting as such, passed any ordinance or adopted any resolution relating to appellee's re-employment, against which the mayor might have interposed a veto, and have assigned reasons for that action. Of course, his veto might have been overridden; but this was not done.

Appellee invokes the provisions of § 16 of act 322 of the Acts of 1937, p. 1221, which act reads as follows: "The City Council, or other governing body, shall, from time to time, fix the number of employees and the salaries to be drawn by each in the departments affected by this act."

There does not appear in the record before us any ordinance enacted or any resolution passed by the city council the enforcement of which would entitle appellee to a writ of mandamus against the mayor requiring the restoration of his position to him. Certain members of the city council testified that such a resolution was passed by the council, but there is no other evidence of that fact. It is stated in McQuillin Municipal Corporation, 2nd Ed., vol. 3, at § 918, p. 19, that "Usually parol evidence is not admissible to prove an ordinance or resolution." Our cases of *El Dorado* v. *Faulkner,* 107 Ark. 455, 155 S. W. 516, Ann. Cas. 1915A, 708, and *Malvern* v. *Cooper,* 108 Ark. 24, 156 S. W. 845, are cited in support of that statement. A headnote to the case of *City of El Dorado* v. *Faulkner, supra,* reads as follows: "In the absence of proof of their destruction or loss, parol testimony is not admissible to prove an ordinance or resolution of a town or city council." See, also, *Pugh* v. *City of Little Rock,* 35 Ark. 75; *Hill* v. *Rector,* 161 Ark. 574, 256 S. W. 848.

There is in the record before us no evidence of any action of the city council except the parol testimony showing the passage of the resolution; but, as appears from the cases cited, this testimony is incompetent to prove that fact.

The opinion in the case of *Fiveash* v. *Holderness,* 190 Ark. 264, 78 S. W. 2d 820, is applicable here. We there quoted and followed the rule announced in 2 Dillon, Mun. Corp., § 479, that "The purpose of the civil service statutes and of other laws prohibiting the discharge of em-

ployees without cause assigned, notice, and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations. These statutes are not intended to affect or control the power of the city council or the executive officers of the city to abolish offices when they are no longer necessary or for reasons of economy. They are not intended to furnish an assurance to the officer or employee that he will be retained in the service of the city after the time when his services are required. They do not prevent his discharge in good faith without a trial and without notice when the office or position is abolished as unnecessary, or for reasons of economy.''

In the case of *State of Washington, ex rel. Ausburn* v. *City of Seattle,* 190 Wash. 222, 67 P. 2d 913, 111 A. L. R. 418, there appears an extensive annotation on the question of the ''Power to suspend or lay off public officers or employees for a temporary period without pay as an economy and not a disciplinary measure,'' from which it appears that it has been generally held that this power exists, and its exercise does not constitute a violation of civil service regulations.

In Vol. 2 (Revised) McQuillin Municipal Corporations (2nd Ed.), p. 448, § 581.1, it is said: ''As has previously been seen, civil service laws and veterans' preference acts usually cover subordinate positions only, and as a rule have no application to elective officers, those holding confidential positions, etc. . . . Likewise, they do not apply where the removal is made in good faith for reasons of economy; or where an office or place is abolished in good faith, but of course such action cannot be taken to cover up the discharge of an employee in contravention of the law. . . .''

Upon the face of the record before us it does not appear that the mayor acted arbitrarily, or without authority, and we have many cases to the effect that the writ of mandamus will not be granted to review the exercise of any discretion of an officer or official board, but can only be invoked to compel the officer or board to exercise such discretion; and this the mayor has done.

*State, ex rel. Latta* v. *Marianna,* 183 Ark. 927, 39 S. W. 2d 301; and cases there cited.

We conclude, therefore, that it was error to award the writ, and that judgment will be reversed, and the cause will be dismissed.