The Honorable Bill Walters State Senator P.O. Box 280 Greenwood, AR 72936-0280
Dear Senator Walters:
I am writing in response to your request for my opinion regarding a dispute between the mayor and the city council of the city of Hartford, a city of the second class. You report the mayor of Hartford fired the police chief, whereupon the Hartford city council passed an ordinance to rehire him as a patrolman subject to the council's exclusive supervision. The mayor vetoed the city council's action, but the council apparently ignored the veto. The mayor now asks for clarification regarding the former police chief's employment status.
RESPONSE
Your request raises issues of fact that I am neither authorized nor equipped to resolve. Assuming the city council has neither delegated employment decisions to a civil service commission nor enacted an ordinance otherwise depriving the mayor of employment authority, I can opine that the mayor was acting within his authority in initially firing the police chief. However, only a finder of fact can determine whether the board properly rehired the police chief and whether the mayor effectively vetoed the ordinance designating the former chief a city patrolman. Finally, assuming both the ordinance and the veto were initially effective, I believe the veto would render the ordinance a nullity if the city council simply ignored the veto.
Your question closely resembles one I addressed in the attached Ark. Op. Att'y Gen. No. 99-077, in which I considered whether a mayor could veto a city council's reinstatement of a department head the mayor had fired. As noted in my previous opinion, the applicable statute is A.C.A. §14-42-110, which provides in pertinent part:
 (a)(1) Mayors in cities of the first class and second class and incorporated towns shall have the power to appoint and remove all department heads, including city and town marshals when an ordinance has been passed making city and town marshals appointed, unless the city or town council shall, by a two-thirds (2/3) majority of the total membership of the council, vote to override the mayor's action.
 (2) Provided, however, that in cities of the first class and second class with civil service commissions, the governing body of the city may, by ordinance, delegate the authority to appoint and remove the heads of the police and fire departments to the city's civil service commission.
(Emphasis added.) Pursuant to this statute, the Hartford city council might have rehired the police chief for his former position so long as the ordinance undertaking such action won a 2/3 majority of the council's votes. However, you report that the former chief was rehired for a different position — namely, city patrolman. At issue, then, is whether the council was justified in making this hiring decision and, if so, whether the mayor effectively vetoed this action.
In addressing this question, I am guided by the following:
 Municipalities are creatures of the legislature and as such have only the powers bestowed upon them by statute or the constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). The validity of a city ordinance thus depends upon the authority granted by the legislature or constitution. City of Little Rock v. Raines, 241 Ark. 1071, 411 S.W.2d 486 (1967).
Ark. Op. Att'y Gen. No. 94-128. To extend this metaphor: "Municipal police departments are creatures of the city's governing body, which has the authority to prescribe and define their duties and powers." Ark. Op. Att'y Gen. No. 96-061. The relationship among the mayor, the city council and a city police department is addressed in A.C.A. § 14-52-101, which provides:
 The city council shall have power to establish a city police department, to organize it under the general superintendence of the mayor, and to prescribe its duties and define its powers in such manner as will most effectually preserve the peace of the city, secure the citizens thereof from personal violence, and safeguard their property from fire and unlawful depredations.
At issue is whether the term "general superintendence" vests in the mayor the exclusive power to hire and fire police officers, who are municipal employees as opposed to department heads. Subsection 14-43-504(b)(1) of the Arkansas Code provides that the mayor will "[s]upervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction." In acknowledging that the mayor might need to refer officers for discipline, this statute recognizes that the mayor's supervisory power does not necessarily amount to plenary authority to make all employment decisions — or, stated differently, that the term "general superintendence" does not imply total autonomy in matters of hiring and firing. This conclusion is consistent with the principle that "the executive authority of a city of the second class generally resides with the city council, except to the extent bestowed upon or delegated to another (such as the mayor or other municipal officer) by state statute or local ordinance." Ark. Op. Att'y Gen. No. 95-367. See also Ark. Op. Att'y Gen. No. 93-268 (opining that absent statutory directives to the contrary, the hiring and firing of municipal employees may be controlled by municipal charter and ordinances — i.e., by the city council); Ark. Op. Att'y Gen. No. 93-332 (opining that ordinance could declare that termination decisions of employees other than department heads would be subject to majority approval of city council). As these authorities suggest, I cannot opine on the scope of the Hartford mayor's authority without reference to applicable local ordinances.
Assuming the city council's action was permissible, the question remains whether the mayor was empowered to veto the rehiring. The scope of a mayor's veto power in a city of the second class is set forth at A.C.A. § 14-44-107, which provides in pertinent part:
 (b)(1) The mayor in these cities shall have the power to veto, within five (5) days, Sundays excepted, after the action of the council thereon, any ordinance, resolution, or order adopted or made by the council, or any part thereof, which in his judgment is contrary to the public interest.
 (2)(A) In case of a veto, before the next regular meeting of the council, the mayor shall file in the office of the city recorder, to be laid before the meeting, a written statement of his reasons for so doing.
 (B) No ordinance, resolution, or order, or part thereof, vetoed by the mayor shall have any force or validity unless, after the written statement is laid before it, the council shall, by a vote of two-thirds (2/3) of all the aldermen elected thereto, pass it over the veto.
In Satterfield, Mayor v. Fewell, 202 Ark. 67, 70, 149 S.W.2d 949 (1941), the Supreme Court held that a mayor could veto a city council ordinance dictating the reemployment of a city worker the mayor had suspended, subject to the conditions set forth in the statute recited above. Accord
Ark. Op. Att'y Gen. No. 91-180 (opining that when a mayor vetoed the suspension of police chief and the city council failed to override the veto, the chief of police remained employed). You have not informed me whether the mayor observed the formalities required for a veto under the above-recited statute. However, assuming he did, and further assuming that the Hartford city council did not override the veto by a 2/3 vote, it is my opinion that the resolution whereby the former chief of police was purportedly rehired is null and void.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh