Mary E. BAKER et al *v.* Claude ODOM
et al

75-110                                    529 S.W. 2d 138

Opinion delivered November 10, 1975

*McArthur, Lofton & Wilson,* for appellants.

*Hall, Tucker, Lovell & Bramhall,* for appellees.

CARLETON HARRIS, Chief Justice. Appellees, fifty-nine persons,[1] almost all of whom reside within one mile, most within a quarter or a half mile, of appellants' dirt motorcycle racetrack, instituted this suit in equity, seeking to enjoin the operation of the track as a private nuisance. Appellants are Mary Baker and her son, Jim Bker, who own the land, and Phillip DuVall and Marion D. Caple, who have leased the property and have developed a motorcycle dirt track. After a

---

[1]Married couples are counted as one in this computation.

hearing, the chancellor granted a temporary restraining order and subsequently on trial of the issues, permanently enjoined appellants from conducting motorcycle or automobile races at the track, finding same to constitute a private nuisance with reference to appellees. From the decree so entered, appellants bring this appeal. For reversal, three points are asserted, which we proceed to discuss in the order listed.

"I.

TRIAL COURT ERRED IN REFUSING TO DISQUALIFY HIMSELF AND TO VACATE THE TEMPORARY INJUNCTION WHICH HE GRANTED."

Following the issuance of the temporary restraining order, appellants filed a motion to vacate the order, alleging that the chancellor owned land at least as near to the property of the appellants as some of the named appellees; further, that the chancellor was an incorporator of the Benton Speedbowl, a competitor of the appellants, it being thus asserted that he was disqualified to act in the case, and it was contended that the order should be set aside.

As to the first contention, the principal reason for seeking the disqualification of the judge according to appellants, was that he might feel that the value of his property was affected. A hearing was set, at which time the chancellor stated, with respect to the proximity of his home to appellants' property, that he lived from a mile and a half to two miles "as the crow flies" from the racetrack property, and that he did not feel that the track would have any "bearing upon the value of my property whatsoever." There was no showing by appellants, nor any effort to show, that the chancellor had been subjected to noise caused by the racing motorcycles and, of course, the burden was upon appellants to make such a showing.

As to the second ground for disqualification, the chancellor stated that he had been an incorporator of the Benton Speedbowl, incorporated in 1958, but that he had dis-

posed of his interest about five years before the present suit, did not even know who was operating the Benton Speedbowl, and had no connection or interest whatsoever in the mentioned Speedbowl. The chancellor declined to disqualify. When the case came on for trial, appellants served a subpoena on the judge, who refused to honor same, stating that he certainly was not going to testify in a case that he was trying. At that time, he also stated to counsel for appellants, "I will tell you anything you want to know." We think there was no showing that the court was "interested" as that term has been defined in Article 7, Section 20 of the Constitution of the State of Arkansas and Ark. Stat. Ann. § 22-113 (Repl. 1962).[2] See *Foreman* v. *Marianna*, 43 Ark. 324. Appellants admit that the trial court stated that it no longer had an interest in the Benton Speedbowl, but then propounds the question, "Did he sell or give it to a relative or close friend?" Of course, this information could have been obtained by subpoenaing the records of the corporation; moreover, as already pointed out, the court stated that it would "tell you anything you want to know", but no questions were asked in this regard. We are of the view that the record falls short of reflecting facts that would warrant disqualification.

"II.

### TRIAL COURT ABUSED ITS DISCRETION IN LIMITING THE PRETRIAL DISCOVERY OF THE APPELLANT."

We do not agree. The complaint is that the court abused its discretion in requiring appellees to answer only nineteen of fifty-one interrogatories propounded by appellants. These interrogatories were reviewed individually in a hearing, and, without going into detail, the grounds for refusing to require answers were generally that appellants had asked for legal conclusions — or for facts equally available to both parties —

---

[2]§ 22-113 provides:

"No judge of the circuit court, justice of the county court, judge of the court of probate or justice of the peace, shall sit on the determination of any cause or proceeding in which he is interested, or related to either party within the fourth degree of consanguinity or affinity, or shall have been of counsel, without consent of parties."

or for facts already admitted. With respect to other queries, appellees' counsel stipulated that the testimony of all appellees would be the same as that of the appellees who had testified at the preliminary hearing for a temporary restraining order.[3] Additionally, appellants point to no specific instances of surprise or prejudice resulting from the trial court's action, and absent a specific showing of prejudice, it would appear that no abuse of discretion occurred.

## "III.

### THE GRANTING OF A PERMANENT INJUNCTION WAS CONTRARY TO THE EVIDENCE AND THE LAW."

Again, we cannot agree with the contention of appellants. No point would be served by detailing the testimony of the numerous witnesses who testified that the operation of the track was a nuisance. Virtually all testified that the operation produced noise and dust that disturbed their enjoyment and use of their lands . . . this noise and dust preventing them from getting outside their houses when races were being held . . . the noise made sleeping impossible . . . the noise prevented normal conversation outdoors . . . television could not be enjoyed. According to one witness, the noise resembled "four or five men out there with chainsaws cutting down trees." Two complained about trespassers who crossed their property to reach the track. The testimony reflected that the area involved was a semi-rural residential area with only a few commercial establishments.

Witnesses for appellants testified that the area where appellees resided already contained some commercial enterprises, including an Alcoa plant. The court received testimony that appellants had spent over $36,000.00 to build their track, that races had been conducted only on a few Sundays each month, and that appellants planned to develop an automobile and motorcycle speedway on their grounds, complete with parks, trees and grandstands. Appellant also offered three witnesses, living within a three-quarter mile radius of the track, who said that the noise from the track did

---

[3]Sixteen testified at the first hearing.

not disturb them. Finally, appellants called an expert, an engineer who specialized in sound measurements for radio stations. The witness measured sound levels from five motorcycles at appellants' track and made computations that purportedly reflected noise levels for thirty motorcycles. He also made computations for noise levels from race cars. On cross-examination, however, the witness admitted that appellant Baker had supplied the measuring instrument used in the tests, and that he had never used such an instrument before. Moreover, he had not checked the instrument for correct calibration. DuVall and Baker testified that there were plans to place mufflers on the motorcycles in the future, but no expert testified as to the value of these devices in reducing noise.

The opinion in *Durfey* v. *Thalheimer*, 85 Ark. 544, 109 S.W. 519, sets forth the rule that applies to nuisances resulting from the operation of a business:

> "It is the duty of everyone to so use his property as not to injure that of another, and it matters not how well constructed or conducted a [business] may be, it is nevertheless a nuisance if it is so built as to destroy the comfort of persons owning and occupying adjoining premises, creating annoyances which render life uncomfortable, and it may be abated as a nuisance."

Though no Arkansas cases have considered whether the operation of a motor vehicle racetrack may create a nuisance, other jurisdictions provide several decisions on the issue. See generally Annotation, 41 ALR 3d 1273. The general rule of these cases, illustrated in *Bedminster* v. *Vargo Dragway, Inc.*, 253 A 2d 659, is in accord with that of the *Durfey* case, *supra*, i.e., while not a nuisance *per se*, a motor vehicle racetrack may become a nuisance either because of the locality in which it is carried on or because it is conducted in an improper manner. In particular, other courts have found that satisfactory evidence of noise, fumes and dust from a racetrack, disrupting the activities of surrounding landowners, may constitute sufficient grounds for declaring the racetrack a nuisance. *Bedminster* v. *Vargo Dragway, Inc., supra; Sakler* v. *Huls*, 20 Ohio Ops. 2d 283, 183 NE 2d 152.

Appellants Baker and DuVall testified that they planned to increase the extent of their operations by building a new racetrack and including automobile races in future programs.

We think that a preponderance of the testimony clearly establishes that previous races conducted by appellants seriously interfered with the enjoyment of neighboring residential property, and we find no error in the ruling by the court that same constituted a nuisance. However, the court also restrained appellants from operating an automobile racetrack, and under our cases this phase of the court's order must be modified.[4] In *Cooper* v. *Whissen,* 95 Ark. 545, 130 S.W. 703, we stated that where an injunction is sought merely on the ground that a lawful project will be put to a use that will constitute a nuisance, the court will ordinarily refuse to restrain the construction or completion of the project, leaving a plaintiff free to thereafter assert his rights in the proper manner if the contemplated use results in a nuisance. It was pointed out that ordinarily an injunction, in such instances, will not be granted unless the act threatened is a nuisance *per se*. While we have no cases on the subject, it appears generally speaking, that the operation of a motor vehicle racetrack is not a nuisance *per se*. See Annotation, 41 ALR 3d 1276. In fact, we know of no case to the contrary.

Accordingly, the restraining order issued by the Saline County Chancery Court is modified to the extent of setting aside such order insofar as it relates to the racing of automobiles. Let it be emphasized, however, that this modification is due to the fact that insufficient evidence was offered relative to automobile racing to justify such restraining order and appellants, if proceeding further with plans to develop an automobile racetrack, will do so entirely at their own risk, for as pointed out in *Cooper* v. *Whissen, supra,* a claimant is free "to assert his rights thereafter in an appropriate manner if the contemplated use results in a nuisance."

Affirmed as modified.

---

[4]One witness testified that one Saturday or Sunday afternoon she heard two cars which evidently were running around the track, and oil and gas fumes "hung so heavy that we had to shut our windows because my husband has bronchial trouble and it bothered him." She said the fumes were "still there the next morning." This was the only testimony relative to the racing of automobiles.