Roger C. MEARS, Jr., County Judge
*v.* Harold L. HALL, Public Defender

77-424                                         569 S.W. 2d 91

Opinion delivered July 3, 1978
(In Banc)

[Rehearing denied September 11, 1978.]

830

*Jack D. Files,* County Atty., and *Milton Lueken,* Asst. County Atty., for appellant.

*Lee A. Munson,* Pros. Atty., by: *John Wesley Hall, Jr.,* Dep. Pros. Atty., and Quorum Court Legal Counsel, for appellee.

JOHN A. FOGLEMAN, Justice. On June 28, 1977, the two circuit judges having criminal jurisdiction in the Sixth Judicial District of Arkansas, acting under authority of Act 279 of 1975, entered an order in Pulaski Circuit Court case No. CR-75-938 continuing the operation of the existing Public Defender System. This had the effect of leaving Harold Hall in the status of public defender. In this order, the judges also approved a budget for the operation of the public defender's office for the fiscal year 1977-1978. Thereafter, on July 26, 1977, the Quorum Court of Pulaski County passed Ordinance No. 63, making an appropriation for the support of the public defender's office. On August 8, 1977, the Quorum Court of Perry County passed its Ordinance No. 0-46, recognizing the public defender system created by the order entered in Pulaski County by the circuit judges, appropriating $1,750 for its share of the expenses of the public defender, purportedly on the basis of the number of criminal cases handled by the public defender or his staff in each county. In the meantime, the County Judge of Pulaski County had vetoed Ordinance No. 63, but the Quorum Court overrode his veto on August 9, 1977. When salaries of the public defender, deputies and office employees were not paid after the passage of the ordinance, appellee filed his petition for

mandamus against appellant as County Judge of Pulaski County to require him to comply with Ordinance No. 63.

In his response appellant contended that the circuit court was without jurisdiction of the petition, because appellee's remedy was by appeal; that Ordinance No. 63 was unconstitutional under Amendment 55 and Art. 4, § 2 and Art. 6, § 4 of the Constitution of Arkansas; and that the action was premature because Act 246 of 1977 requires that the Quorum Court appropriate funds to pay fees to appointed attorneys after the fees have been set by the circuit court order.

The circuit court granted the writ and appellant brings this appeal asserting four points for reversal. We find no reversible error and affirm.

I

Appellant contends that the trial court erred in denying his motion to transfer the case to another division of the Circuit Court of Pulaski County. This motion was based solely on Ark. Stat. Ann. § 22-114 (Repl. 1962). Appellant contends that the presiding judge of the division of the court had an interest in the case, because he was one of the two judges sitting as a "Public Defender Commission" which created the office of Public Defender and set the salaries which appellee sought to require appellant to pay. In his argument here, appellant contends that the judge to whom the petition was presented was interested in the case in that he and another judge created the Public Defender's office for the Sixth Judicial District, named Harold Hall as Public Defender, and set the salaries which petitioner sought to require appellant to pay.

Where the presiding judge of a division in which an action is pending is interested in the suit, Ark. Stat. Ann. § 22-114 requires that the suit be transferred to another division of the court. This section and Ark. Stat. Ann. § 22-113 (Repl. 1962) tend to carry out the intention of Art. 7, § 20 of the Constitution of Arkansas. *Black* v. *Cockrill,* 239 Ark. 367, 389 S.W. 2d 881. The "interest" which is disqualifying under these provisions is a personal proprietary or pecuniary interest or one affecting the individual rights of the judge, and the liability, gain or relief to the judge must turn on the out-

come of the suit. *Osborne* v. *Board of Improvement of Paving Dist. No. 5,* 94 Ark. 563, 128 S.W. 357; *Foreman* v. *Town of Marianna,* 43 Ark. 324; *Ferrell* v. *Keel,* 103 Ark. 96, 146 S.W. 494; *Baker* v. *Odom,* 258 Ark. 826, 529 S.W. 2d 138. The circuit judge in this case did not have the interest in the case which would require a transfer of the case simply because an order entered by him was involved or questioned in the case. Such a situation can and does arise in many instances.

## II

Appellant argues that the County Court has exclusive original jurisdiction of all matters pertaining to the disbursement of county funds under Art. 7, § 28 of the Arkansas Constitution and that the only remedy available to appellee was by appeal. He relies upon Art. 7, § 33 of the constitution, which provides that appeals from all judgments of the county court may be taken to the circuit court under such regulations as may be provided by law. Procedures for such appeals are set out in Ark. Stat. Ann. § 27-2001 (Supp. 1977). Basic to this particular argument is appellant's reliance upon holdings that exclusive original jurisdiction of claims against the county is vested in the county court and that the allowance of claims is a judicial act performed by the county court, not the county judge. *Watson* v. *Union County,* 193 Ark. 559, 101 S.W. 2d 791; *Campbell* v. *Little Rock School Dist.,* 222 Ark. 615, 262 S.W. 2d 267; *Logan County* v. *Anderson,* 202 Ark. 244, 150 S.W. 2d 197; *Farmer* v. *Franklin County,* 179 Ark. 373, 16 S.W. 2d 10.

This is no longer the case. One of the provisions of § 3 of Amendment 55 to the Arkansas Constitution is that "[t]he County Judge, in addition to other powers and duties provided for by the Constitution and by law, shall . . . authorize and approve disbursement of all appropriated county funds." The language of Art. 7, § 28 provided that the county court should have exclusive original jurisdiction in all matters relating to the disbursement of money for county purposes.

It is clear to us that the quoted provision in § 3 of Amendment 55 is in irreconcilable conflict with the provision of Art. 7, § 28 relating to disbursement of county funds and that jurisdiction of the disbursement of county funds is not

now vested in the county court and that the county judge does not act judicially in passing upon claims against the county. Although we find no ambiguity in § 3 of Amendment 55 and have no doubt about its intent, our view is supported by the provisions of Act 742 of 1977, in which § 78 (B) (2) provides that the powers of the county judge enumerated in § 3 of Amendment 55 shall be performed by the county judge in an executive capacity. That act was passed by the General Assembly in implementation of Amendment 55. Legislative interpretation of constitutional provisions is never binding on the courts, but, if there is any doubt or ambiguity, it is persuasive and entitled to some consideration. *Griffin* v. *Rhoton,* 85 Ark. 89, 107 S.W. 380. It is more significant when most of the members of the General Assembly of 1973 who proposed Amendment 55 voted favorably on Act 742 in 1977. *State* v. *Sorrells,* 15 Ark. 664, 675; *Sumpter* v. *Duffie,* 80 Ark. 369, 97 S.W. 435.

Appellant argues that, even so, the county judge does not act merely ministerially. Act 742, § 78 (B) (2) itself provides that, before approving vouchers for payment of county funds, the county judge must determine that there is a balance of funds in the pertinent appropriation, that the expenditure is in compliance with the purposes for which the funds are appropriated, that all state purchasing laws and other state laws or ordinances of the quorum court are complied with in the expenditure and that the goods or services for which expenditure is to be made have been rendered and the payment has been incurred in a lawful manner and is owed by the county. There is also a provision that no money shall be paid out of the treasury until the same shall have been appropriated by law and then only in accordance with such appropriation. This act also provides that appeals from the performance or non-performance of any administrative act to be performed by the county judge, acting in his capacity as chief executive officer of the county may be taken to the court of competent jurisdiction as now provided by law. See Act 742, § 83 (2).

It is on the basis of the above provisions that appellant contends that appeal, not mandamus, is the proper remedy. Of course, we have long held that the discretion of an officer in the executive branch of the government cannot be con-

trolled by mandamus. *Hardin* v. *Cassinelli,* 204 Ark. 1016, 166 S.W. 2d 258. See also, *Lewis* v. *Conlee,* 258 Ark. 715, 529 S.W. 2d 132. It will lie to require such an official to act, or to exercise his discretion. *Better Way Life Ins. Co.* v. *Graves,* 210 Ark. 13, 194 S.W. 2d 10; *Satterfield* v. *Fewell,* 202 Ark. 67, 149 S.W. 2d 949; *Garland Power & Development Co.* v. *State Board of Railroad Incorporation,* 94 Ark. 422, 127 S.W. 454. See also, *Robertson* v. *Derrick,* 113 Ark. 40, 166 S.W. 936; *Jackson* v. *Collins,* 193 Ark. 737, 102 S.W. 2d 548.

The discretion of the county judge in the matter is rather limited. In the matter at hand, the county judge under § 3, Amendment 55 had both the power and the duty to authorize and approve disbursement of appropriated county funds. He also had the power and duty to administer the ordinances of the county. If Ordinance 63 and the appropriation made by it were legally proper, and we hold that they were, the county judge had a duty to perform. It appears from the evidence in this case that appellant did not intend to perform this duty. He has contended that the ordinance was unconstitutional ever since its passage, as shown by his veto message. He testified that he would not pay claims under the ordinance until he consulted with his attorneys in regard to the constitutionality of their payment and admitted that he had told the members of the quorum court that he would pay these claims when the courts told him the ordinance was legal and constitutional. He also admitted that he had said something to the members of that court to the effect that, even if they appropriated the money to pay the salaries of the public defender, he would not pay them unless they had an approval from the Supreme Court. The record is clear that appellant had refused to exercise whatever discretion he had in the matter. These circumstances are sufficient to show distinctly that appellant did not intend to do that which appellee sought to enforce by mandamus, and constitute a proper foundation for proceeding by mandamus, if the writ is otherwise justified. *Coit* v. *Elliott, Judge,* 28 Ark. 294. When it is manifest that a specific application or request to an officer against whom mandamus is sought would be useless, the remedy may be invoked without first making such a request or application. *Pugsley* v. *Sellmeyer,* 158 Ark. 247, 250 S.W. 538, 30 ALR 1212. This rule has special application when the

respondent official contends that the legislation authorizing the action sought is unconstitutional. 52 Am. Jur. 2d 511, Mandamus, § 187. It was not necessary that a specific request for approval of the disbursement of funds for the salaries in question be made of appellant as a condition precedent to the bringing of this action.

There may well have been a right of appeal by appellee from appellant's "non-performance" in the matter. Mandamus may not be used as a substitute for an appeal. *Mobley* v. *Conway County Court,* 236 Ark. 163, 365 S.W. 2d 122; *Calloway* v. *Harley, County Judge,* 112 Ark. 558, 166 S.W. 546; *Hutt, Ex parte,* 14 Ark. 368. See also, *Burks* v. *Mobley,* 245 Ark. 43, 430 S.W. 2d 859. It may be resorted to, however, when the remedy by appeal is incomplete or inadequate. *Edmondson* v. *Bourland,* 179 Ark. 975, 18 S.W. 2d 1020.

The rule that mandamus cannot be used to usurp the function of an appeal rests upon a broader limitation on the use of the writ, i.e., that it will not lie where there is an adequate remedy at law. *Williamson, ex parte,* 8 Ark. 424. See also, *Rankin* v. *Fletcher,* 84 Ark. 156, 104 S.W. 933. It is but a corrollary of the rule that the writ will not lie where there is another adequate remedy. 55 CJS 52, Mandamus, § 22; Ferris, Extraordinary Legal Remedies, § 212, p. 245; High's Extraordinary Legal Remedies (3d Ed.), § 177, p. 188, § 188, p. 198. In order to be adequate as a bar to mandamus, the alternate remedy at law must be one that is plain and complete and as practical and efficient to the ends of justice and its proper administration as the remedy by mandamus. *Ghent* v. *State,* 189 Ark. 747, 75 S.W. 2d 67. It must be well adapted to remedy the wrong complained of and if it is inconvenient or incomplete, the court exercises its sound discretion in granting or refusing the writ. *Huie* v. *Barkman,* 179 Ark. 772, 18 S.W. 2d 334.

It can hardly be said that the remedy by appeal in this situation was adequate or complete. It appears from the budget which was part of the Pulaski Circuit Court order affording the basis for § 3 (b) of Ordinance 63 that the salaries of eight people were involved. Apparently each of them would be required to file or present vouchers periodically, perhaps

monthly, for salaries, and appeal each one until a final decision was reached on appeal. The same would have to be done for office supplies, postage, telephone service, etc., if such things were obtainable at all under such circumstances. Utilizing the remedy of appeal would probably result in the demise of the public defender system while that remedy was being pursued.

### III

Appellant next contends that the trial court erred in granting mandamus because the requirements of Ordinance 63 had not been met. Sec. 1 of the ordinance recognized the Public Defender System created by Pulaski County Circuit Court order in CR-75-938 as the Public Defender System for the Sixth Judicial District. Sec. 2 provides that the System shall be compensated under Act 246 of 1977 at a rate of a minimum of $25 and a maximum of $350 per case for attorney's fees and up to $100 for investigative services where a lawyer in the Public Defender System is appointed to represent an indigent defendant in the Pulaski County Circuit Court. Sec. 3 (a) provides that Pulaski County shall transfer the funds paid under § 2 into an account on its books. Sec. 3 (b) provides that out of the funds paid to that account, Pulaski County shall disburse semi-monthly salaries to the employees of the System in accordance with the above-mentioned order of the Pulaski Circuit Court and all legally required fringe benefits like retirement and FICA for these employees.[1] Sec. 3 (c) provides that the county shall also pay the necessary expenses of conducting the office of the Public Defender System. Sec. 4 appropriates $92,642.38 from the County General Fund to pay the sums listed in §§ 2 and 3 for the period from July 1, 1977 to Dec. 31, 1977. This was one-half of the budget approved by the circuit judges.

The basis of appellant's argument on this point is that under Act 246 of 1977, the Quorum Court makes an appropriation only after the order approving a fee in a particular case has been made, and thereafter the amount would

---

[1]The legality of payment of fringe benefits, retirement and FICA is not before us on this appeal. Of course, payments cannot be properly made unless legally required.

be transferred into the special account and, when that fund is sufficient, the salaries of the Public Defender System would be paid. Appellant contends that the orders on a case by case basis have not even been entered and no funds were available to be transferred to the fund from which payments were to be made under Ordinance 63.

The record was rather incomplete on the availability of funds. Of course, appellant correctly contends that no payment can be made under the appropriation until allowances of fees by the circuit court under Act 246 of 1977 provide an adequate amount to cover the payments sought. The requirements of the ordinance are clear in that respect.

Appellee stated in open court that the judge presiding had made allowances amounting to $600 or $700 and that he was informed that the other Judge of the Circuit Court of Pulaski County had allowed $7,000. Even though this statement was not contradicted, we cannot take these facts to be established. Clearly, under the provisions of the ordinance and the requirement of § 78 (B) (2) (a) of Act 742 that the county judge determine that there is a balance of funds on hand in the appropriation, payment cannot be made until the appropriation is funded by allowances under Act 246. But this was not the basis for appellant's inaction, and appropriate provision for this contingency was made in the order from which this appeal is taken. The original order provides that it is to be complied with only when funds are available in the Public Defender's Account as established under Ordinance 63. In a supplemental order entered the next day, appellant was ordered to forthwith transfer the amounts theretofore ordered by the Pulaski County Circuit Court pursuant to Act 246 of 1977 and §§ 2 and 3 of Ordinance 63 from the Pulaski County General Fund to a Public Defender Fund to be established and maintained by the county treasurer.

We see nothing wrong with the method adopted by the quorum court in making the appropriation by ordering the transfer of allowances made under Act 246 without waiting to make a separate appropriation after each circuit court order of allowance is presented to it. The appropriation then would be automatic, for Act 246 leaves the quorum court without any discretion in the matter. See *Mackey* v. *McDonald*, 255

Ark. 978, 504 S.W. 2d 726. There is nothing new about anticipation of revenues in the making of appropriations, either by the state legislature or by quorum courts. Necessarily, most appropriations are so made. The amount of $92,642.38 appropriated serves as a limit on this anticipatory appropriation and, if that limit should be reached, the individual circuit court orders allowing fees would have to be presented to the quorum court thereafter for appropriation.

## IV

Lastly, appellant contends that Ordinance 63 is unconstitutional. The first argument advanced is that under Amendment 55, § 1 (a) the Quorum Court of Pulaski County may exercise only local legislative authority. It is appellant's position that the Public Defender System was created for the Sixth Judicial District, which includes Perry County, and that the ordinance violates the constitutional amendment, because the Quorum Court of Pulaski County cannot enter into an interlocal agreement with another county, as its function, set out in § 90 of Act 742 of 1977, is only to authorize such an agreement, which must be entered into by the County Court of Pulaski County. As we see it, no interlocal agreement is involved.

Appellant also argues that the ordinance is unconstitutional because the Quorum Court has appropriated money to pay a public defender created under Act 279 of 1975, which appellant says is unconstitutional because it violates Art. 4, §§ 1 and 2, and Art. 16, § 4 of the Arkansas Constitution and Amendment 55. The theory of this argument is that under Art. 4, §§ 1 and 2 and Art. 16, § 4, the setting of salaries is a legislative function which cannot be exercised by any other department of government. Appellant says that prior to Amendment 55, salaries for all officers and employees, both of the state and of the counties were fixed by the General Assembly, but, after the adoption of Amendment 55, only the Quorum Court could fix the salaries of county employees.

Appellant also says that the circuit judges, if they are acting in obedience to Act 279 of 1975, are without jurisdiction

to act, because that law is an unconstitutional delegation of legislative power to fix salaries. In *Pulaski County* v. *Adkisson, Judge,* 262 Ark. 636, 560 S.W. 2d 222, this court held that the provision for the setting of salaries to be paid without appropriation by the quorum court in § 3 of Act 279 of 1975 by the circuit judges was in violation of Art. 4, § 2 of the Constitution of Arkansas expressing the doctrine of separation of powers. The court order involved also involved the payment without appropriation. But the sections of that act are clearly severable and the remainder of the act stands unimpaired. The Public Defender System originally created by the Pulaski Circuit Court order was recognized and adopted by the Pulaski County Quorum Court. Ordinance 63 is an appropriation by the proper legislative body. It was not passed under Act 279 of 1975. It was passed in compliance with Act 246 of 1977. It is proper under the provision of § 70 of Act 742 of 1977, which requires a county to support the administration of justice in the county.

The Constitution of the United States mandates that indigent persons charged with felonies and certain misdemeanors be provided effective assistance of counsel. *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 ALR 2d 733 (1963); *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964); *Pointer* v. *Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 923, 10 ALR 3d 974 (1967); *Swenson* v. *Bosler,* 386 U.S. 258, 87 S. Ct. 996, 18 L. Ed. 2d 33 (1967); *Mempa* v. *Rhay,* 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967); *Anders* v. *California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493, reh. den. 388 U.S. 924, 87 S. Ct. 2094, 18 L. Ed. 2d 1377 (1967); *Argersinger* v. *Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972); *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). This is an essential part of the administration of justice in a county. In Arkansas, it was, in felony cases, long before the United States Supreme Court found it to be constitutionally required. See Rev. Stat., Ch. 45, § 112; Ark. Stat. Ann. § 43-1203 (Repl. 1964); *Therman* v. *State,* 205 Ark. 376, 168 S.W. 2d 833. Payment of some of the cost of providing counsel by counties was authorized by Act 276 of 1953. See Ark. Stat. Ann. § 43-2415, -2416 (Repl. 1964). It became mandatory through Act 125 of 1971. [Ark. Stat. Ann.

§ 43-2417, -2418 (Repl. 1975).] A further step was taken through Act 246 of 1977, where provision was made for an investigation expense allowance and an increased maximum fee for an attorney, and the quorum court in each county was required to make the necessary appropriation upon receipt of an order of the circuit court fixing the fee in a case. Up to this point, individual attorneys were appointed by the circuit court on a case by case basis. A public defender system was authorized for the Sixth Judicial District by Act 279 of 1977. The public defender under this act is an attorney appointed by the judges of the courts having jurisdiction of criminal cases to represent indigents in criminal cases, just as individual attorneys had been previously appointed on a case by case basis by these judges.

Under Arkansas law, the responsibility for payment of counsel furnished indigents is that of the individual counties, as it has been since compensation for such attorneys was first provided for in Act 276 of 1953. The principal difference between the appointed counsel system and the public defender system is that the former acts on a case by case basis and the latter on a permanent basis. *State* v. *DeJoseph*, 3 Conn. Cir. 624, 222 A. 2d 752 (1966). In *People* v. *Mullins*, 188 Col. 29, 532 P. 2d 736 (1975), the Supreme Court of Colorado pointed out:

> The appointment of a public defender does not differ significantly from the appointment of private counsel in an individual criminal case. Indeed, the appointment of a public defender is of greater benefit to a defendant who is thereby provided counsel who is employed solely in criminal defense work.

It is obvious that the Quorum Court of Pulaski County, given the option of counsel appointed on a case by case basis or a public defender system in meeting its obligation to provide defense counsel for indigents chose the latter as the more efficient system.

The public defender and his deputies are neither state nor county employees, either under Act 279 or Ordinance 63. There is nothing in the act or the ordinance to make them either. The only sense in which they are officers is that they

are officers of the court, as are attorneys appointed under Ark. Stat. Ann. § 43-1203 (Repl. 1977) and formerly compensated under Ark. Stat. Ann. § 43-2417, -2418 (Act 125 of 1971), but now under § 1 of Act 246 of 1977 [§ 43-2419 (Repl. 1977)], which is also the source of the compensation of the public defender system under Ordinance 63. A public defender appointed by the judiciary under this system is not a public officer or employee, but is a private attorney representing indigent defendants in criminal cases. *Spring* v. *Constantine,* 168 Conn. 563, 362 A. 2d 871 (1975). See also, *Ex parte Hough,* 24 Cal. 2d 522, 150 P. 2d 448 (1944).

Another facet of this argument by appellant is that Act 279 unconstitutionally conferred appointing power upon circuit judges in contravention of the doctrine of separation of powers, in that the appointment of state officers and employees is an executive function and the employment of county officers and employees is, under Amendment 55, § 3, within the power of the county judge. As we have pointed out, neither state nor county employees are part of the public defender system. Secretaries will be the employees of the public defender. The appointment of a public defender is no more an executive function than is the appointment of an attorney to represent an indigent in an individual case. The case of *Oates* v. *Rogers,* 201 Ark. 335, 144 S.W. 2d 457, is inapplicable because it deals with the impropriety of judicial officers appointing executive officers whose duties are not related to the administration of justice.

In *Burrow* v. *Batchelor,* 193 Ark. 229, 98 S.W. 2d 946, we held that the salaries of the duly appointed reporter and stenographer for the grand jury and of the duly appointed and acting court reporter in the Fifteenth Judicial Circuit were a part of the necessary expenses of the operation of county government of Franklin County, which was a part of the Fifteenth Judicial District. This, of course, was based upon the fact that the services of these reporters were essential to the administration of justice. Counties are civil divisions of the state for political and judicial purposes and are its auxiliaries and instrumentalities in the administration of its government. *Lake* v. *Tatum,* 175 Ark. 90, 1 S.W. 2d 554. They are a political subdivision of the state for the administration of

justice and local government. *Pulaski County* v. *Reeve,* 42 Ark. 54. The very word "county" signifies a circuit or portion of the state resulting from a division of the state into such areas for the better government thereof and the easier administration of justice. 56 Am. Jur. 2d 74, Municipal Corporations, etc., § 5. Nothing in Amendment 55 changes the status of the county insofar as its primary purposes and functions are concerned. The administration of justice within the county is one of the primary reasons for its existence. The Quorum Court of Pulaski County has found that the public defender system in the Sixth Judicial District is the best and most effective means of the county's fulfilling an essential part of the administration of justice, i.e., providing defense counsel to indigents. In doing so, it has insured that the cost shall not exceed the cost which would be incurred in appointment of individual counsel by the circuit judge on a case by case basis. While it is possible that the quorum court may have the power to choose some other system, it could not escape liability for payment of the fees of appointed counsel in the absence of a substitute. The adoption of the public defender system, by action of the Quorum Court of Pulaski County, in spite of the fact that it will be in effect in Perry County as well as Pulaski County, does not make the county any less responsible for bearing the cost of providing defense counsel to indigents than it is for payment of the salaries of court reporters who will also serve in both counties.

In a dissenting opinion, the issue is raised for the first time in this proceeding, that Act 279 of 1975 is local legislation, and as such, unconstitutional. Of course, this matter is not before us, because it was not raised in the trial court. Furthermore, it is not mentioned in appellant's brief in any way. In any event, saying it is local legislation is contrary to every decision of this court on the subject. An act does not have to be *necessary* to the administration of justice in order to avoid the ban against local legislation. It is not local legislation if it pertains or relates to the administration of justice.

In the case cited by the majority in *McLellan* v. *Pledger,* 209 Ark. 159, 189 S.W. 2d 789, the issue pertained to fees of the clerk of the Chancery Court of Sebastian County and those of the stenographer of the Tenth Chancery District,

and it was held that the act allowing a fee to the court steno-
grapher to be credited to the "Stenographer's Fund Account".
of the chancery district was not local legislation. The reason
was that the statute *related* to the administration of justice be-
cause under modern conditions, the court reporter is an es-
sential officer in reporting the proceedings of the courts. See
*Sebastian Bridge District* v. *Lynch,* 200 Ark. 134, 138 S.W. 2d
81. The same question was involved and the same answer
given in *McLellan* v. *Pledger,* supra. Other cases holding that
legislation *relating* to the administration of justice is not lo-
cal are: *Smalley* v. *City of Ft. Smith,* 239 Ark. 39, 386 S.W. 2d
944; *City of Stuttgart* v. *Elms,* 220 Ark. 722, 249 S.W. 2d 829.
Legislation dealing exclusively with the functions of a court
of statewide jurisdiction is not local legislation. *Buzbee* v. *Hut-
ton,* 186 Ark. 134, 52 S.W. 2d 647. The rationale of these hold-
ings was first stated in *Waterman* v. *Hawkins,* 75 Ark. 120, 86
S.W. 844, in the following language:

> *** Though such an act relates to a court exercising
> jurisdiction over limited territory, it is general in its
> operation, and affects all citizens coming within the
> jurisdiction of the court. Whether an act of the
> Legislature be a local or general law must be deter-
> mined by the generality with which it affects the people
> as a whole, rather than the extent of the territory over
> which it operates; and, if it affects equally all persons
> who come within its range, it can be neither special nor
> local, within the meaning of the Constitution. ***

We elaborated upon this rationale in an opinion on rehearing
in *Webb* v. *Adams,* 180 Ark. 713, 23 S.W. 2d 617, in treating
and disavowing an intention to impair the holding in *Water-
man,* saying:

> *** This is in recognition of that principle of state
> sovereignty under which the state, through its
> Legislature, may protect its own interest, and, by virtue
> of it, the Legislature may treat every subject of
> sovereignty as within a class by itself, and bills of that
> kind are usually held to be general and not local or
> special laws. ***

Again, in speaking of the rationale of *Waterman* in *Cannon* v.
*May,* 183 Ark. 107, 35 S.W. 2d 70, we said:

*** A Missouri case was cited in support of the ruling. The Supreme Court of Missouri based its holding on the principle that the judicial system of the state was a whole and that acts dealing with the courts have been usually held general although not applicable to every court of like nature in the state. The ruling proceeds upon the doctrine that the judicial department of the state is a "composite unit." ***

The rationale of *Waterman, Cannon* and *Webb* was relied upon in *Buzbee.*

There is no logical basis for saying that furnishing defense counsel to indigent defendants is not a part of the administration of justice. How it should be accomplished in Pulaski County is a matter addressing itself to the General Assembly and to the Quorum Court of Pulaski County.

We find no error in the issuance of the writ in this case and affirm.

GEORGE ROSE SMITH, J., concurs; HICKMAN, J., dissents.

DARRELL HICKMAN, Justice. The majority has decided, after considerable strain both legally and logically, that an ordinance of the Pulaski County Quorum Court appropriating money for a Public Defender System, as authorized by Act 279 of 1975, is legal.

The simple fact that the Pulaski County Quorum Court has appropriated money for the Public Defender System as it exists in the Sixth Judicial District (which is comprised of Pulaski and Perry Counties), is not enough to satisfy all the obvious deficiencies of the act creating the Public Defender System in this district.

Act 279 of 1975 is clearly a local act in violation of the Arkansas Constitution. Amend. 14, Ark. Const. This act was passed at the same session as the "Public Defender Act." See Act 996 of 1975.

The authorities in Pulaski County, rather than

proceeding with a public defender system as authorized by Act 996 of 1975, chose to seek separate legislation for their public defender system. There is no doubt the act is local legislation since on its face it only applies to Pulaski and Perry Counties. We only approve local legislation in the interests of "the administration of justice." See *Sebastian Bridge Dist. v. Lynch,* 200 Ark. 134, 138 S.W. 2d 81 (1940). Without conceding the point, the argument that the local act for a public defender system is necessary to the administration of justice carries little weight because Pulaski and Perry Counties could have proceeded to establish a public defender system under Act 996 of 1975, and thereby have avoided the obvious shortcomings of the local act.

The act in question does not merely authorize Pulaski County to have a public defender system, it gives the circuit court the power to *create* and *maintain* the system. This power is alien to courts and is a clear violation of the separation of powers clause of the Arkansas Constitution. Art. 4, § 2, Ark. Const. The fatal portion of Act 279 reads:

> The circuit court may *create* a Public Defender System for indigent persons accused of serious crimes in the district and *provide* for the compensation of such attorneys and investigators as is necessary and for the reasonable expenses of the office. These salaries and expenses shall be paid for the administration of justice from General Revenues of the county and without the necessity of a prior appropriation therefor by the quorum court. Section 3, Act 279 of 1975. [Emphasis added].

We have already declared that portion of Section 3 which authorizes the circuit court to approve and set salaries to be unconstitutional. *Mears v. Adkisson, Judge,* 262 Ark. 636, 560 S.W. 2d 222 (1977). The issues before us now were also argued in *Adkisson,* but we declined to review them.

The appellant argues that Act 279 is an unlawful delegation of a legislative function. I believe this argument has merit. The act clearly gives the circuit court the authority to create a system and maintain it; this is a legislative and administrative function.

In the case before us a budget of $185,000 has been approved by the quorum court which authorizes: salaries for a public defender, three assistants, a chief investigator, assistant investigator, and three secretaries; retirement benefits of some $14,000 (whether the employees contribute to a state, county or private retirement system, we do not know); and, office supplies and equipment of some $23,000.

The majority in approving the authority of the circuit courts to create this system state that the system is comparable to a circuit judge appointing a single lawyer to represent a single indigent and authorizing a fee not to exceed $350.00 for his services. Ark. Stat. Ann. § 43-2419 (Repl. 1977). Such an argument avoids the question squarely presented to us, i.e., whether the public defender and his employees are state or county employees. Rather than answer this question, the majority has decided that public defenders are neither state or county employees, but are "private" attorneys acting as officers of the court. This is an incredible conclusion.

Perhaps the majority has to reach this conclusion because if the employees of the public defender's office are state employees, then only the state, not the counties, can set the salaries. Art. 16, § 4, Ark. Const. If the employees are county employees, then the county judge, as opposed to the circuit judge, pursuant to Amendment 55 has the authority to hire and fire public defenders and the employees of the office. Amend. 55, § 4, Ark. Const.

Apparently the majority has decided that the circuit judge or judges (we do not know which since there are four circuit judges in Pulaski County at this time) will hire or fire the public defender and the employees. The act makes no provision for such matters. It will be no comfort to indigent defendants to know that their particular lawyer has been hired by the judge trying their case, and that the lawyer needs the approval of that same judge to keep his job.

It would be much easier to brand Act 279 for what it is, blatant local legislation which clearly violates the separation of powers clause of the Arkansas Constitution. Rather than

being a tool for the effective administration of justice, the act clearly becomes a possible violation of the due process clause of the Arkansas and United States Constitutions.

Rather than seek to patch up Act 279 and, in fact, do a little legislating ourselves, it would be better to tell the Sixth Judicial District to operate a public defender system as authorized by the Public Defender Act or seek legislation which will satisfy the constitution.

I respectfully dissent to the view of the majority in this case for the reasons which I have stated.