The Honorable Jim Bob Duggar State Representative 2101 Johnson Road Springdale, AR 72762-6030
Dear Representative Johnson:
I am writing in response to your request for an opinion concerning the county collector's automation fund under Act 1215 of 2001, codified at A.C.A. § 21-6-305 (Supp. 2001), and the use of computers in the county collector's office. Your specific questions are as follows:
 1. Can the county quorum court pass an ordinance or implement a county personnel policy that regulates an elected county official as an employee?
 2. Can the county quorum court or the county judge regulate the county collector in an appropriate decision to choose a computer software system? Does Arkansas Code Ann. § 14-14-1105, or any other law, give the county judge the right to choose a computer system for an elected county collector other than an appropriate system chosen by that elected collector?
 3. Can the county quorum court, by ordinance, or the administrative power of the county judge require an elected county official to make all computer-related purchases (i.e., peripheral devices, hardware, software, and data installation) through the county computer administrator?
 4. Can the county quorum court or the county judge deny access to any part of the collector's computer without his approval?
 5. Are the e-mails of elected county officials subject to the Arkansas Freedom of Information Act (FOIA)? Are county employee's e-mails subject to the FOIA? Can e-mails received on a county computer by an elected county official or county employee be forwarded at his or her discretion or do they need permission from the sender?
RESPONSE
It is my opinion that the answer to your first question is, generally, "no." I cannot conclusively answer either part of your second question without considering the particular regulation and the facts surrounding the action of the county judge. It is my opinion that the answer to your third question is in all likelihood "no" as regards an automation system for the county collector under Act 1215 of 2001. With regard to your fourth question, determining whether the quorum court or the county judge would be acting within statutory or constitutional authorization in this respect presents questions of fact that cannot be resolved in the limited format of this opinion. The answer to the first two parts of your final question regarding e-mails is, generally, "yes." With regard to forwarding e-mails, I have found no state law that would require the sender's permission. However, this is a matter that presumably could be addressed by office policy.
Question 1 — Can the county quorum court pass an ordinance or implement acounty personnel policy that regulates an elected county official as anemployee?
It is my opinion that the answer to this question is, generally, "no" pursuant to A.C.A. § 14-14-805 (Repl. 1998). This Code section limits the scope of the quorum court's legislative power, and provides in part under subsection (2) that "[l]egislation promulgated by a quorum court dealing with matters of employee policy and practices shall be applicable only toemployees of the county and shall not apply to the elected countyofficers of the county." (Emphasis added).
Question 2 — Can the county quorum court or the county judge regulate thecounty collector in an appropriate decision to choose a computer softwaresystem? Does Arkansas Code Ann. § 14-14-1105, or any other law, give thecounty judge the right to choose a computer system for an elected countycollector other than an appropriate system chosen by that electedcollector?
Because you have stated that your questions deal with the county collector's "automation fund" under Act 1251 of 2001 (A.C.A. §21-6-305(c) and (d) (Supp. 2001)), I am assuming that this question is asked with regard to a computerized automated accounting and record keeping system acquired with such funds. This question requires consideration of Act 1215, as well as some explanation of the basic distribution of county governmental powers and functions. Some discussion of these matters will be helpful before addressing this question, as well as your remaining questions.
Similar to the state government (see Ark. Const. art. 4, §§ 1 and 2), county government in Arkansas is comprised of separate branches in order to provide a system of checks and balances. See Ark. Const. amend. 55; A.C.A. § 14-14-502 (Supp. 2001); Walker v. Washington Co., 263 Ark. 317,564 S.W.2d 513 (1978). Under the classic division of the powers, the legislature makes the laws and appropriates public revenues, the executive administers the laws and expends the appropriations, and the judiciary interprets the laws. Federal Express Corp. v. Skelton,265 Ark. 187, 578 S.W.2d 1 (1979). The quorum court's appropriation power is also clearly expressed under A.C.A. § 14-14-801 (Repl. 1998), part of the enabling legislation to Amendment 55, which recognizes that this power emanates from the local legislative authority vested in the quorum court under Amendment 55. Amendment 55 also delineates the power and duty of the county judge as regards appropriations by the quorum court. Section 3 provides in part that the county judge shall "authorize and approve disbursement of appropriated county funds[.]" The enabling legislation to Amendment 55 elaborates on the procedures to be followed by the county judge in this regard. Arkansas Code Annotated § 14-14-1102(b)(2)(B) (Repl. 1998) provides that before approving any voucher for the payment of county funds, the judge shall determine that:
 (i) There is a sufficient appropriation available for the purpose and there is a sufficient unencumbered balance of funds on hand in the appropriate county fund to pay therefor;
 (ii) The expenditure is in compliance with the purposes for which the funds are appropriated;
 (iii) All state purchasing laws and other state laws or ordinances of the quorum court are complied with in the expenditure of the moneys;
 (iv) The goods or services for which expenditure is to be made have been rendered and the payment thereof has been incurred in a lawful manner and is owed by the county. However, a county judge may approve, in advance, claims payable to the University of Arkansas Cooperative Extension Service for educational services to be rendered during all or part of the current fiscal year.
Thus, as general propositions of law, the disbursement of county funds must be preceded by an appropriation of the quorum court and be approved by the county judge. These requirements necessarily come into play when the county collector seeks to establish an automation system pursuant to Act 1215. The act authorizes the county collector to set aside up to 10% of annual commissions "to be credited to the county collector's automation fund to purchase, maintain, and operate an automated record-keeping system." A.C.A. § 21-6-305(c)(2)(A) (Supp. 2001). The act addresses the appropriation and expenditure of the automation fund as follows:
 Moneys deposited in this fund may accumulate and shall be appropriated and expended for the uses designated in this section by the quorum court at the direction of the county collector.
Id. at subsection (c)(3).
This language is somewhat troubling in suggesting that the quorum court will be subject to the order or command of the county collector in its appropriation of moneys from this automation fund. See Black's LawDictionary 414 (5th ed. 1979) (defining "direction" to include "[t]he act of governing, management; superintendence . . .; a guiding or authoritative instruction; order; command.") Bearing in mind the above principles concerning the appropriation of county funds, however, I interpret the act as imposing an obligation on the quorum court to appropriate these earmarked funds only for the designated uses when the county collector requests the appropriation. The definition of the verb "direct" is "[t]o point to; guide; order; command; instruct. To advise; suggest; request." Id. at 413. Thus, the county collector is authorized to instruct or advise the quorum court that circumstances exist under which it is statutorily obligated to act in appropriating these funds. Assuming there are sufficient moneys in the fund for the purpose, I construe Act 1215 as removing any discretion of the quorum court to decide whether there will be an appropriation; nor may the quorum court redirect the funds to any other purpose. It must be recognized, however, that the quorum court still determines the amount to be allowed, so long as it is reasonable. I do not view Act 1215 as depriving the quorum court of its fiscal authority to decide how much money can be spent. This authority resides in the quorum court, in the absence of a state law fixing the amount allowed or some basis in either Amendment 55 or the County Government Code for curtailing this fiscal discretion in the court. Accord Union County v. Union Co. Election Comm'n, 274 Ark. 286,623 S.W.2d 827 (1981).
With regard to expending these funds, by authorizing the county collector to direct expenditures, Act 1215 appears to recognize that the expenditure of appropriated funds is inherently a function of the executive branch of government. Of course, disbursement of the funds cannot occur until authorized and approved by the county judge. Ark. Const. amend. 55, § 3 (see discussion, infra).
Having outlined what I believe are the basic principles guiding the analysis in this instance, I will now address your specific question. With regard to the authority of the quorum court or the county judge to "regulate" the county collector in choosing a software system, a conclusive answer will likely depend upon the particular regulation. As noted above, it is my opinion that the amount to be allowed generally falls within the discretion of the quorum court. The Arkansas Supreme Court has stated that:
 [A]n agency of county government which performs a function imposed by law must live within its appropriation unless that appropriation is unreasonable. Appropriations made by the quorum court are presumed to be reasonable and the burden rests on the entity filing the claim in excess of an appropriation to prove unreasonableness.
Union County, supra, 274 Ark. at 291.
As a general matter, therefore, the quorum court regulates how much money can be spent on a computer software system. However, the quorum court cannot regulate expenditures once an appropriation is made. Seegenerally Op. Att'y Gen. Nos. 2000-262 and 89-206. Nor, in my opinion, can it use devices such as line-item appropriations as a means of controlling or dictating expenditures. Id. It is my opinion, consonant with these principles, that the actual choice of a software system is up to the county collector. But he or she will have to live within the appropriation unless it can be proved that the appropriation is unreasonable.
With regard to the county judge regulating the choice of a system, while it is my opinion that the actual choice of a system is a matter for the county collector in accordance with his or her authority under Act 1215 to direct expenditures, the county judge's constitutional power and duty to authorize and approve disbursements must be recognized. Ark. Const. amend. 55, § 3. Before approving vouchers, the county judge must determine that there is a balance of funds in the appropriation, that the expenditure is in compliance with the purposes for which the funds are appropriated, that all purchasing requirements are complied with, and that payment has been incurred in a lawful manner and is owed by the county. A.C.A. § 14-14-1102(b)(2)(B), supra.
In commenting on these procedures to be followed by the judge, the Court has stated:
 The logic of [A.C.A. § 14-14-1102(b)(2)(B)] is obvious. The county judge, as chief administrative officer of the county, before disbursing county funds, must determine that the expenses have been incurred in a lawful manner and that payment is owed by the county.
Venhaus v. Pulaski County Quorum Court, 291 Ark. 558, 562, 726 S.W.2d 668
(1987). The Court also noted in this regard that "[t]he quorum court appropriates the money and the county judge simply executes those appropriations as an administrative officer." Beaumont v. Adkisson,267 Ark. 511, 515, 593 S.W.2d 11 (1980), citing Mears v. Hall, 263 Ark. 827,569 S.W.2d 91 (1978).
It may thus be concluded, generally, that the county judge is notregulating the county collector when he performs his duty to approve disbursements. He is simply acting within his statutory and constitutional authority. It is my opinion that the judge may have little actual discretion in the matter if there is a sufficient appropriation available for the system chosen by the collector, if the expenditure is in compliance with the purpose of Act 1215, and if all laws are complied with in the expenditure. Cf. Mears, supra. Nevertheless, all disbursements must ultimately be approved by the judge. The judge retains the constitutional power to act or not to act, subject to judicial review. If the county judge refuses to authorize payment and the county collector believes the judge is not properly exercising whatever discretion he may have in the matter, then a mandamus action may be the proper recourse. Id.
In response to that part of your second question regarding the existence of any laws giving the county judge the right to choose a computer system other than an appropriate system chosen by the county collector, there are no specific laws to this effect; nor, in my opinion, does A.C.A. §14-14-1105 (jurisdiction of county court) confer such authority on the county judge as a matter of right. The above discussion delineating the county judge's authority with respect to the disbursement of appropriated county funds must be noted, however.
Question 3 — Can the county quorum court, by ordinance, or theadministrative power of the county judge require an elected countyofficial to make all computer-related purchases (i.e., peripheraldevices, hardware, software, and data installation) through the countycomputer administrator?
While it is my opinion as a general matter that this requirement may lawfully be imposed on elected county officials, I believe the answer is in all likelihood "no" as regards an automation system for the county collector that is purchased and maintained pursuant to Act 1215.
The legislature has expressed its intent for the county collector to direct expenditures for the purchase, maintenance, and operation of an automated accounting and records keeping system. A.C.A. § 21-6-305(c)(2) and (3) (Supp. 2001). As noted above, this should not be interpreted on the one hand as abridging the quorum court's power to appropriate county funds or the county judge's power and duty to authorize and approve the disbursement of appropriations. On the other hand, the separation of powers doctrine prevents the quorum court from administering an appropriation once made. Op. Att'y Gen. Nos. 2000-262 and 89-206, supra.
Nor, in my opinion, may the quorum court give this power to the county judge in connection with an automation system established under Act 1215. Such action by the quorum court may violate separation of powers as an attempt to give an executive officer a significant degree of control over the core functions of another elected county office, i.e., tax collections in this instance. See generally Op. Att'y Gen. 91-020
(regarding the factors in determining whether an unconstitutional usurpation exists). In any event, without considering separation of powers, I believe it is clear that an ordinance imposing such a purchasing requirement would be contrary to state law, specifically Act 1215 of 2001, as applied to the county collector in connection with this automation system. See also generally A.C.A. § 14-14-1103 (Repl. 1998) (providing that the executive powers and duties of all executive officials other than the county judge "shall be those established by the Arkansas Constitution and by law.") (Emphasis added). This same conclusion applies with regard to the county judge administratively imposing such a requirement. It is my opinion that the purchase, maintenance, and operation of an automation system constitute part of the powers and duties of the county collector pursuant to Act 1215. Transferring this authority to some other office or department would be unlawful, in my opinion.
It should perhaps be noted that I have considered and rejected the application of A.C.A. § 14-14-702 in this instance, which authorizes the quorum court to prescribe the functions of all offices and to reassign any function or duty assigned by statute. A.C.A. § 14-14-702(2) (Repl. 1998). The Arkansas Supreme Court has made it clear that such a reassignment of functions cannot occur without a vote of the electorate if removal of the function constitutes a "revision and separation of the office . . . under Ark. Const. amend. 55, 2(b)." Gravett v. Villines,314 Ark. 320, 326, 862 S.W.2d 260 (1993). In Gravett, the court rejected a county ordinance that transferred responsibility for operation and maintenance of the county jail from the sheriff to a civilian administrator who would operate the jail under the authority of the county judge. The court held that the running of the county jail "constitutes a substantial responsibility of the office of sheriff" that cannot be removed without a majority vote at a general election. Id. I believe it can be similarly argued that a "revision and separation" of the collector's office would occur if all purchases related to the county collector's automation system had to be made through a county computer administrator. The function of collecting taxes and accounting for those collections is the primary responsibility of the office of collector.See A.C.A. § 14-14-1301(a)(6) (providing for the election of a separate collector of taxes and stating that "[e]ach collector, upon receiving the tax charge of the county, shall proceed to collect them as may be prescribed by law[.]" The emergency clause to Act 1215 states that "due to the passage of Amendment 79 to the Constitution of Arkansas it is vital that the county collectors have the means to establish an automation system to ensure efficient and accurate record are kept by the county collector." Acts 2001, No. 1215, § 2. It is therefore my opinion that if faced with the question, a court would likely conclude that the purchase, maintenance, and operation of the collector's automation system is essential to the tax collection and accounting function and constitutes a substantial responsibility of the office of collector that cannot be removed or reassigned without a vote of the electorate.
Question 4 — Can the county quorum court or the county judge deny accessto any part of the collector's computer without his approval?
I cannot satisfactorily address this general question without considering the specific facts surrounding the action of either the quorum court or the county judge in this regard. The county collector is charged with the day-to-day administrative responsibility of his office (A.C.A. §14-14-805(2)), an obligation that in my estimation includes maintaining and operating the automation system. At the same time, the county judge is responsible for "the administration, care, and keeping" of county property. A.C.A. § 14-14-1102(b)(3) (recognizing that the county judge "shall have custody of county property.") See also Ark. Const. amend.55, § 3. While I can conceive of facts that might give rise to a potential conflict between these two areas of authority, I cannot speculate as to the outcome in the absence of a particular factual scenario.
Question 5 — Are the e-mails of elected county officials subject to theArkansas Freedom of Information Act (FOIA)? Are county employees' e-mailssubject to the FOIA? Can e-mails received on a county computer by anelected county official or county employee be forwarded at his or herdiscretion or do they need permission from the sender?
The answer to the first and second part of this question is, generally, "yes" as to those e-mails that relate to official functions. I have previously opined that electronically stored e-mail messages are "public records" subject to disclosure under the FOIA, assuming that they in fact constitute a record of the performance or lack of performance of official functions (A.C.A. § 25-19-103), and that no exemption applies (§25-19-105). Op. Att'y Gen. 99-018. With regard to forwarding such e-mails, I am aware of no general requirement or procedures under state law that would require permission from the sender. Of course, information that is exempt from disclosure under the FOIA or other specific statutes must be deleted before the record is released. It should also be noted that this matter of handling of e-mail communications is presumably a matter that could be address by a particular office policy, perhaps under some confidentiality requirement. The possible existence of a controlling office policy should thus be noted.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh