The Honorable Jim Argue State Senator 5300 Evergreen Drive Little Rock, AR 72205-1814
Dear Senator Argue:
I am writing in response to your request for my expedited opinion on the following question:
 Does Amendment 78 allow the future revenue growth from the uniform rate of tax[1] levied pursuant to Amendment 74 to be redirected to a local redevelopment project?
 RESPONSE
Under current legislation, the answer to this question is "no." The General Assembly has defined the term "taxing unit" as used in Ark. Const. amend. 78 to mean "any city, county, school district, or community college." A.C.A. § 14-168-301(16). In accordance with the terms of Amendment 78, the legislature has chosen to make available for redirection to local redevelopment projects only statutorily defined portions of local ad valorem property tax revenues. As you point out in your factual recitation, I have previously opined on at least three occasions that the uniform rate of tax is a state tax, levied by the voters who enacted Ark. Const. amend. 74. See Ark. Ops. Att'y Gen. Nos.2003-031, 2003-065 and 2004-134. I will not here repeat the analysis that led me to this conclusion. The legislature has not chosen to earmark any state taxes as subject to division pursuant to Amendment 78. With respect to a possible amendment of the legislation implementing Amendment 78, I consider it unclear whether a reviewing court would deem it consistent with the constitution for the legislature to approve any redirection to a redevelopment project of revenue increases realized from application of the uniform rate of tax following a reappraisal.
Amendment 78 § (1)(d) provides:
 The General Assembly may provide that the ad valorem taxes levied by any taxing unit, in which is located all or part of an area included in a redevelopment district, may be divided so that all or part of the ad valorem taxes levied against any increase in the assessed value of property in the area obtaining after the effective date of the ordinance approving the redevelopment plan for the district shall be used to pay any indebtedness incurred for the redevelopment project; provided, however, there shall be excluded from the division all ad valorem taxes for debt service approved by voters in a taxing unit prior to the effective date of this amendment.
(Emphasis added.) This provision permits, but does not oblige, the legislature to direct that some or all of the increase in property taxes levied by a "taxing unit" that contains all or part of a redevelopment district be used to defray the redevelopment district's bonded indebtedness.
As discussed in detail in the attached Ark. Op. Att'y Gen. No. 2001-295, the legislature exercised the discretion afforded it in Amendment 78 by enacting Act 1197 of 2001, which is currently codified at A.C.A. §§14-168-301 through 322 (Supp. 2003). As my predecessor stressed in questioning whether the division contemplated in Amendment 78 might extend to revenues realized from applying the uniform rate of tax, A.C.A. § 14-168-301(16) defines the term "taxing unit" to mean "any city, county, school district, or community college" — a definition that suggests that the division of tax revenues directed in subchapter 3 of chapter 168 of title 14 of the Code will involve only revenues realized from local, as opposed to state, levies. Subsection 14-168-301(17) further defines the term "total ad valorem rate" in purely local terms as "the total millage rate of all county, city, school, or other local general property taxes levied on all taxable property within a redevelopment district in a year." Section 14-168-312 applies this definition in the formula for calculating the tax revenues to be diverted from other uses in order to retire redevelopment district debt, thus leaving unaffected the revenues realized from applying the state uniform rate of tax, which will accordingly remain exclusively devoted to maintenance and operation of the schools pursuant to Amendment 74. The exclusively local effect of a redevelopment district's formation is further reflected in the fact that subchapter 3 requires that officials involved in pursuing a redevelopment project notify only local, as opposed to state, officials of significant events relating to the project. See A.C.A. §§ 14-168-305(b)(2)(B) (notice of the hearing regarding the district's proposed creation) and 14-168(e)(2)(B) (notice of the hearing regarding the district's proposed project plan).
As I discussed in detail in Opinions Nos. 2003-031, 2003-065 and 2004-134, and as my predecessor strongly suggested in Opinion No.2001-295, Amendment 74 imposed a 25-mil statewide tax to be devoted to maintenance and operation of the schools. See Lake View School DistrictNo. 25 v. Huckabee, 351 Ark. 31, 78-79, 91 S.W.3d 472 (2002) (stressing that providing an adequate education is a state, not merely a local, obligation). As noted in the previous paragraph, nothing in the legislation implementing Amendment 78 supports the conclusion that the General Assembly intended to authorize diverting any portion of these tax revenues to redevelopment districts.
Having ventured this opinion, I should note that the question remains whether the legislature might in fact authorize such a diversion if it were inclined to do so. I believe answering this question would entail interpreting the scope of the term "taxing unit" as used in Amendment 78, as my predecessor did in Opinion No. 2001-295. As noted above, Amendment 78 § (1)(d) authorizes the diversion to a redevelopment district of increased ad valorem tax revenues realized by a "taxing unit." In Opinion No. 2001-295, my predecessor offered the following analysis in considering the scope of this term:
 If the uniform rate is "levied" by the state, a question arises as to whether the "state" or its collective voters comprise a "taxing unit" within the contemplation of Amendment 78 such that its revenues may be "divided." The common meaning of the term "unit" is a "single thing or person or group that is a constituent of a whole." Webster's Seventh New Collegiate Dictionary (1972) at 970. Ordinarily, therefore, the state itself would not be thought of as a taxing "unit" with reference to state or local taxation. It is more commonly thought of as the "whole" for these purposes. But cf. Board of Commissioners of Shawnee County v. Brookover, 198 Kan. 70, 422 P.2d 906 (1967) (the state as a whole comprises a "taxing unit" for the purpose of levy and collection of state general taxes).
 . . . [W]hether . . . the state is included in the meaning of the term" taxing unit" for purposes of Amendment 78 . . . [is] amenable to a fair debate. I cannot predict with any certainty how four of the seven members of the Arkansas Supreme Court would determine the issue. I cannot opine conclusively, therefore, whether Amendment 78 itself
authorizes the General Assembly to divert the uniform rate of tax to support redevelopment districts. The Amendment does not mention or take account of the uniform rate and the general language used is ambiguous on the question.
See the attached Ark. Op. Att'y Gen. No 2003-212 (concurring in this conclusion).
I subscribe to my predecessor's conclusion in Opinion No. 2001-295. However, I will note that the term "unit" has alternatively been defined as "any group of things or persons regarded as an entity" or "one of a number of things, organizations, etc., identical or equivalent in function or form," Random House Webster's Unabridged Dictionary (2d. ed. 1999) — definitions I believe might apply respectively to the state as a union of political subdivisions and as a coeval member of the national union. In my opinion, these alternative definitions reinforce the ambiguity regarding the scope of the term "taxing unit" as used in Amendment 78.
Without presuming to resolve this ambiguity, I will again point out that the legislature to date has elected to apply the term narrowly only to local political subdivisions, school districts and community colleges. I will further note that this construction of the term accords with the constitutional use of the term "taxing unit" in Amendment 59, which mandates a rollback of taxes under specified circumstances in a "taxing unit" defined as a "city or town, county, school district, and community college district." Ark. Const. art. 16, § 14. It is uncertain whether the statutory restriction of the term "taxing unit" as used in Amendment 78 reflects only a legislative act of discretion in limiting the scope of a constitutional term that might be interpreted more broadly or whether it reflects the legislature's conclusion that the term must be construed as applying only to local taxing entities. If the latter interpretation is correct, I believe a reviewing court would afford some deference to the legislature's interpretation. The Arkansas Supreme Court has held that while a legislative interpretation of a constitutional provision is not binding, it is persuasive and entitled to consideration if there is any doubt or ambiguity concerning the constitutional provision. See Mears v.Hall, 263 Ark. 827, 569 S.W.2d 91 (1978). See also Stayton v. Paschall,9 F.2d 109 (D.C. Ark. 1925). However, I will stress again my opinion that regardless of whether the General Assembly might through legislation extend the meaning of the term "taxing unit" to include the state, it has not yet done so. Accordingly, as my predecessor also suggested in Opinion No. 2001-295, I do not believe under current law that a redevelopment district may divert to the purpose of retiring its debt any revenues realized from the application of the uniform rate of tax.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh Enclosures
[1] The term "uniform rate of tax" refers to the mandatory 25-mill ad valorem tax assessment that Amendment 74 § (b)(1) mandates be devoted to maintenance and operation of the schools.